# EXHIBIT A

**EXECUTION COPY**

# CREDIT AGREEMENT

among

## TRANSCARE CORPORATION,
Borrower,

The Several Lenders
from Time to Time Parties Hereto,

and

## PATRIARCH PARTNERS AGENCY SERVICES, LLC,
as Administrative Agent

Dated as of August 4, 2003

\_ 0

Confidential

5.4    Repayment of Loans; Evidence of Debt.

(a)    The Borrower hereby unconditionally promises to pay to the Administrative Agent for the account of the appropriate Revolving Credit Lender or Term Loan Lender, as the case may be, (i) the then unpaid principal amount of each Revolving Credit Loan of such Revolving Credit Lender on the Revolving Credit Termination Date (or such earlier date on which the Loans become due and payable pursuant to Section 10), and (ii) the principal amount of the Term Loan of such Term Loan Lender in installments according to the amortization schedule set forth in Section 2.3 (or on such earlier date on which the Loans become due and payable pursuant to Section 10). The Borrower hereby further agrees to pay interest on the unpaid principal amount of the Loans from time to time outstanding from the date hereof until payment in full thereof at the rates per annum, and on the dates, set forth in Section 5.1.

(b)    Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing indebtedness of the Borrower to such Lender resulting from each Loan of such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time under this Agreement.

(c)    The Administrative Agent, on behalf of the Borrower, shall maintain the Register pursuant to Section 12.6(c), and a subaccount therein for each Lender, in which shall be recorded (i) the amount of each Loan made hereunder and any Note evidencing such Loan, the Type thereof and each Interest Period applicable thereto, (ii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to each Lender hereunder and (iii) both the amount of any sum received by the Administrative Agent hereunder from the Borrower and each Lender's share thereof.

(d)    The entries made in the Register and the accounts of each Lender maintained pursuant to Section 5.4(b) shall, to the extent permitted by applicable law, be prima facie evidence of the existence and amounts of the obligations of the Borrower therein recorded (absent manifest error); provided, however, that the failure of any Lender or the Administrative Agent to maintain the Register or any such account, or any error therein, shall not in any manner affect the obligation of the Borrower to repay (with applicable interest) the Loans made to such Borrower by such Lender and other Obligations owing to such Lender in accordance with the terms of this Agreement.

(e)    The Borrower agrees that, upon the request to the Administrative Agent by any Lender, the Borrower will execute and deliver to such Lender a promissory note of the Borrower evidencing the Term Loan or Revolving Credit Loans, as the case may be, of such Lender, substantially in the forms of Exhibit A-1 or A-2, respectively, with appropriate insertions as to date and principal amount (a "Term Note" or "Revolving Credit Note", respectively).

5.5    Optional Prepayments. The Borrower may on the last day of any Interest Period with respect thereto, in the case of Eurodollar Loans, or at any time and from time to time, in the case of Base Rate Loans, prepay the Loans, in whole or in part, without premium or penalty, upon irrevocable notice delivered to the Administrative Agent prior to 12:00 noon, New York City time, at least three Business Days prior thereto, in the case of Eurodollar Loans, or upon irrevocable notice delivered to the Administrative Agent, prior to 12:00 noon, New York City time, on the Business Day thereof, in the case of Base Rate Loans, specifying the date and amount of prepayment and whether the prepayment is of Eurodollar Loans, Base Rate Loans or a combination thereof, and, if of a combination thereof, the amount allocable to each. Upon receipt of any such notice the Administrative Agent shall promptly notify each Lender thereof. If any such notice is given, the amount specified in such notice shall be due and payable on the date specified therein, together with any amounts payable pursuant to Section 5.13 and, in the case

\ 0

-25-

5.7    <u>Computation of Interest and Fees</u>. (a) All commitment fees, facility fees and interest shall be calculated on the basis of a 360-day year for the actual days elapsed. The Administrative Agent shall as soon as practicable notify the Borrower and the Lenders of each determination of a Eurodollar Rate. Any change in the interest rate on a Loan resulting from a change in the Base Rate or the Eurocurrency Reserve Requirements shall become effective as of the opening of business on the day on which such change becomes effective. The Administrative Agent shall as soon as practicable notify the Borrower and the Lenders of the effective date and the amount of each such change in interest rate.

(b)    Each determination of an interest rate by the Administrative Agent pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower and the Lenders in the absence of manifest error. The Administrative Agent shall, at the request of the Borrower, deliver to the Borrower a statement showing the quotations used by the Administrative Agent in determining any interest rate pursuant to Section 5.1(a) or (c).

5.8    <u>Inability to Determine Interest Rate</u>. If prior to the first day of any Interest Period:

(a)    the Administrative Agent shall have determined (which determination shall be conclusive and binding upon the Borrower) that, by reason of circumstances affecting the relevant market, adequate and reasonable means do not exist for ascertaining the Eurodollar Rate for such Interest Period, or

(b)    the Administrative Agent shall have received notice from the Majority Facility Lenders in respect of the relevant Facility that the Eurodollar Rate determined or to be determined for such Interest Period will not adequately and fairly reflect the cost to such Lenders (as conclusively certified by such Majority Facility Lenders) of making or maintaining their affected Loans during such Interest Period, the Administrative Agent shall give telecopy or telephonic notice thereof to the Borrower and the relevant Lenders as soon as practicable thereafter. If such notice is given (x) any Eurodollar Loans under the relevant Facility requested to be made on the first day of such Interest Period shall be made as Base Rate Loans, (y) any Base Rate Loans under the relevant Facility that were to have been Converted on the first day of such Interest Period to Eurodollar Loans shall be Continued as Base Rate Loans and (z) any outstanding Eurodollar Loans shall be Converted, on the first day of such Interest Period, to Base Rate Loans. Until such notice has been withdrawn by the Administrative Agent, no further Eurodollar Loans under the relevant Facility shall be made or Continued as such, nor shall the Borrower have the right to Convert Loans to Eurodollar Loans. The Administrative Agent shall withdraw (i) any such notice pursuant to clause (a) above if the Administrative Agent determines that the relevant circumstances have ceased to exist and (ii) any such notice pursuant to clause (b) above upon receipt of notice from the Majority Facility Lenders in respect of the relevant Facility that the relevant circumstances described in such clause (b) have ceased to exist.

5.9    <u>Pro Rata Treatment and Payments</u>. (a) Each borrowing by the Borrower from the Lenders hereunder, each payment by the Borrower on account of any commitment fee hereunder and any reduction of the Revolving Credit Commitments of the Lenders shall be made pro rata according to the respective Term Loan Percentages or Revolving Credit Commitment Percentages, as applicable, of the Lenders. Each payment (including each prepayment) by the Borrower on account of principal of and interest on the Term Loans or the Revolving Credit Loans shall be made pro rata according to the respective outstanding principal amounts of the Term Loans or the Revolving Credit Loans, as applicable, then held by the Lenders.

\_0

-27-

Confidential                                                                                                    PP-TRBK0000059

(b)     Notwithstanding anything to the contrary in Section 5.6 or this Section, each Term Loan Lender may, at its option, decline all or any portion of any mandatory prepayment applicable to the Term Loans of such Lender; accordingly, with respect to the amount of any mandatory prepayment described in Section 5.6 that is allocated to the Term Loans (such amounts, the "Prepayment Amount") the Borrower will, in lieu of applying such amount to the prepayment of Term Loans as provided in Section 5.6(d), on the date specified in Section 5.6 for such prepayment, give the Administrative Agent telephonic notice (promptly confirmed in writing) of the aggregate amount required to be applied to prepay Term Loans and requesting that the Administrative Agent prepare and provide to each Term Loan Lender a notice (each, a "Prepayment Option Notice") as described below. As promptly as practicable after receiving such notice from the Borrower, the Administrative Agent will send to each Term Loan Lender a Prepayment Option Notice which shall include an offer by the Borrower to prepay on the date (each a "Prepayment Date") that is 10 Business Days after the date of the Prepayment Option Notice, the Term Loan of such Term Loan Lender by an amount equal to the portion of the Prepayment Amount indicated in such Lender's Prepayment Option Notice as being applicable to such Lender's Term Loans. On the Prepayment Date, (i) the Borrower shall pay to the Administrative Agent the aggregate amount necessary to prepay that portion of the outstanding relevant Term Loans in respect of which Lenders have accepted full or partial prepayment as described above (such Lenders, the "Accepting Lenders") as notified by the Administrative Agent to the Borrower, and such amount shall be applied to reduce the Prepayment Amounts, as applicable, with respect to each Accepting Lender, and (ii) the Borrower shall be entitled to retain 100% of the portion of the Prepayment Amount not accepted by the Lenders.

(c)     All payments (including prepayments) to be made by the Borrower hereunder, whether on account of principal, interest, fees or otherwise, shall be made without set-off or counterclaim and shall be made prior to 12:00 noon, New York City time, on the due date thereof to the Administrative Agent, for the account of the Lenders, at the "Funding and Payment Office" specified in Schedule 5.9(c), in Dollars and in immediately available funds. The Administrative Agent shall distribute such payments to the Lenders promptly upon receipt in like funds as received. If any payment hereunder (other than payments on Eurodollar Loans) becomes due and payable on a day other than a Business Day, such payment shall be extended to the next succeeding Business Day. If any payment on a Eurodollar Loan becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day unless the result of such extension would be to extend such payment into another calendar month in which event such payment shall be made on the immediately preceding Business Day. In the case of any extension of any payment of principal pursuant to the preceding two sentences, interest thereon shall be payable at the then applicable rate during such extension.

(d)     Unless the Administrative Agent shall have been notified in writing by any Lender prior to a borrowing that such Lender will not make the amount that would constitute its share of such borrowing available to the Administrative Agent, the Administrative Agent may assume that such Lender is making such amount available to the Administrative Agent, and the Administrative Agent may, in reliance upon such assumption, make available to the Borrower a corresponding amount. If such amount is not made available to the Administrative Agent by the required time on the Borrowing Date therefor, such Lender shall pay to the Administrative Agent, on demand, such amount with interest thereon at a rate equal to the daily average Federal Funds Effective Rate for the period until such Lender makes such amount immediately available to the Administrative Agent. A certificate of the Administrative Agent submitted to any Lender with respect to any amounts owing under this Section shall be conclusive in the absence of manifest error. If such Lender's share of such borrowing is not made available to the Administrative Agent by such Lender within three Business Days of such Borrowing Date, the Administrative Agent shall also be entitled to recover such amount with interest thereon at the rate per annum applicable to Base Rate Loans hereunder, on demand, from the Borrower.

-28-

consent of the Required Lenders, the Administrative Agent may, or upon the request of the Required Lenders, the Administrative Agent shall, by notice to the Borrower declare the Commitments to be terminated forthwith, whereupon the Commitments shall immediately terminate; and (ii) with the consent of the Required Lenders, the Administrative Agent may, or upon the request of the Required Lenders, the Administrative Agent shall, by notice to the Borrower, declare the Loans hereunder (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable. Except as expressly provided above in this Section, presentment, demand, protest and all other notices of any kind are hereby expressly waived.

### SECTION 11.  THE AGENT

        11.1    <u>Appointment</u>.  Each Lender hereby irrevocably designates and appoints the Administrative Agent as the agent of such Lender under this Agreement and the other Loan Documents, and each such Lender irrevocably authorizes the Administrative Agent, in such capacity, to take such action on its behalf under the provisions of this Agreement and the other Loan Documents and to exercise such powers and perform such duties as are expressly delegated to the Administrative Agent by the terms of this Agreement and the other Loan Documents, together with such other powers as are reasonably incidental thereto.  Notwithstanding any provision to the contrary elsewhere in this Agreement, the Administrative Agent shall not have any duties or responsibilities, except those expressly set forth herein, or any fiduciary relationship with any Lender, and no implied covenants, functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or any other Loan Document or otherwise exist against the Administrative Agent.

        11.2    <u>Delegation of Duties</u>.  The Administrative Agent may execute any of its duties under this Agreement and the other Loan Documents by or through agents or attorneys-in-fact, or may assign such duties to its wholly owned nominee without the consent of the Lenders, and shall be entitled to advice of counsel concerning all matters pertaining to such duties.  The Administrative Agent shall not be responsible for the negligence or misconduct of any agents or attorneys-in-fact selected by it with reasonable care.  It is recognized that it may be necessary or desirable that the Administrative Agent appoint an additional individual or institution as a separate subagent, trustee, co-trustee, collateral agent or collateral co-agent (any such additional individual or institution being referred to herein individually as a "Supplemental Agent" and collectively as "<u>Supplemental Agents</u>").  The Administrative Agent hereby appoints Wachovia Bank, National Association ("<u>Wachovia</u>") as a Supplemental Agent hereunder. The Borrower, each Subsidiary Guarantor and each Lender agree to and acknowledge (i) the appointment of Wachovia as Supplemental Agent herein, (ii) that the Supplemental Agent shall be entitled to the benefit of the provisions of Section 12.5 of the Credit Agreement and this Section 11,  including without limitation the indemnification provisions of Section 11.7; <u>provided</u>, <u>however</u>, that a Supplemental Agent shall only be entitled to payment of any allocated reasonable fees and expenses of in-house counsel pursuant to Section 12.5, if such fees and expenses are authorized and approved by the Required Lenders in writing, and (iii) all references to the Administrative Agent in this Agreement shall also be deemed references to Supplemental Agent, as the context may require. In the event that the Administrative Agent appoints a Supplemental Agent, (i) each and every right, power, privilege or duty expressed or intended by this Agreement or any of the other Loan Documents to be exercised by or vested in or conveyed to the Administrative Agent shall be exercisable by and vest in such Supplemental Agent to the extent, necessary to enable such Supplemental Agent to exercise such rights, powers and privileges with respect to its role as the Administrative Agent hereunder and to perform such duties with respect to its role as the Administrative Agent hereunder and every covenant and obligation contained in the Loan Documents and necessary to the exercise or performance thereof by such Supplemental Agent shall run to and be enforceable by either the Administrative Agent or such Supplemental Agent; <u>provided</u>, <u>however</u>, that each Supplemental Agent shall in no event be entitled to consent to any amendments or modifications or

\_0

Confidential
PP-TRBK0000091

waive any terms hereunder other than amendments, modifications or waivers concerning this entire Section 11, Section 12.1 or Section 12.5, and (ii) the provisions of this Section 11 that refer to the Administrative Agent shall inure to the benefit of such Supplemental Agent and all references therein to the Administrative Agent shall be deemed to be references to the Administrative Agent and/or such Supplemental Agent, as the context may require. Should any instrument in writing from Borrower or any other Loan Party be required by any Supplemental Agent so appointed by the Administrative Agent for more fully and certainly vesting in and confirming to him or it such rights, powers, privileges and duties, Borrower shall, or shall cause such Loan Party to, execute, acknowledge and deliver any and all such instruments promptly upon request by the Administrative Agent. In case any Supplemental Agent, or a successor thereto, shall die, become incapable of acting, resign or be removed, all the rights, powers, privileges and duties of such Supplemental Agent, to the extent permitted by law, shall vest in and be exercised by the Administrative Agent until the appointment of a new Supplemental Agent.

       11.3    Exculpatory Provisions. Neither the Administrative Agent nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates shall be (i) liable for any action lawfully taken or omitted to be taken by it or such Person under or in connection with this Agreement or any other Loan Document (except to the extent that any of the foregoing are found by a final and nonappealable decision of a court of competent jurisdiction to have resulted from its or such Person's own gross negligence or willful misconduct) or (ii) responsible in any manner to any of the Lenders for any recitals, statements, representations or warranties made by the Borrower or any officer thereof contained in this Agreement or any other Loan Document or in any certificate, report, statement or other document referred to or provided for in, or received by the Administrative Agent under or in connection with, this Agreement or any other Loan Document or for the value, validity, effectiveness, genuineness, enforceability or sufficiency of this Agreement or any other Loan Document or for any failure of the Borrower to perform its obligations hereunder or thereunder. The Administrative Agent shall not be under any obligation to any Lender to ascertain or to inquire as to the observance or performance of any of the agreements contained in, or conditions of, this Agreement or any other Loan Document, or to inspect the properties, books or records of any Loan Party. The Administrative Agent shall not be responsible for delays or failures in performance resulting from acts beyond its reasonable control. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war or terrorism, epidemics, nationalization, expropriation, currency restrictions, governmental regulations superimposed after the fact, fire, communications line failures, computer viruses, power failures, earthquakes or other disasters, but shall in no event include the financial condition or financial inability of the Administrative Agent.

       11.4    Reliance by Administrative Agent. The Administrative Agent shall be entitled to rely, and shall be fully protected in relying, upon any note, writing, resolution, notice, consent, certificate, affidavit, letter, cablegram, telegram, or telecopy message, statement, order or other document or conversation believed by it to be genuine and correct and to have been signed, sent or made by the proper Person or Persons and upon advice and statements of legal counsel (including, without limitation, counsel to the Borrower or any other Loan Party), independent accountants and other experts selected by the Administrative Agent. The Administrative Agent may deem and treat the payee of any Note as the owner thereof for all purposes unless a written notice of assignment, negotiation or transfer thereof shall have been filed with the Administrative Agent. The Administrative Agent shall be fully justified in failing or refusing to take any action under this Agreement or any other Loan Document which involve discretionary decision making, including without limitation those actions contemplated by Section 5.8(b) of this Agreement, unless it shall first receive such advice or concurrence of the Required Lenders as it deems appropriate or it shall first be indemnified to its satisfaction by the Lenders against any and all liability and expense which may be incurred by it by reason of taking or continuing to take any such action. The Administrative Agent shall in all cases be fully protected in acting, or in refraining from

\_0

Confidential

acting, under this Agreement and the other Loan Documents in accordance with a request of the Required Lenders, and such request and any action taken or failure to act pursuant thereto shall be binding upon all the Lenders and all future holders of the Loans.

11.5    Notice of Default.    The Administrative Agent shall not be deemed to have knowledge or notice of the occurrence of any Default or Event of Default hereunder except for defaults in the payment of principal, interest and fees required to be made to the Administrative Agent for the account of the Lenders, unless the Administrative Agent has received notice from a Lender or the Borrower referring to this Agreement, describing such Default or Event of Default and stating that such notice is a "notice of default". In the event that the Administrative Agent receives such a notice, the Administrative Agent shall give notice thereof to the Lenders. The Administrative Agent shall take such action with respect to such Default or Event of Default as shall be reasonably directed by the Required Lenders; provided that unless and until the Administrative Agent shall have received such directions, the Administrative Agent may (but shall not be obligated to) take such action, or refrain from taking such action, with respect to such Default or Event of Default as it shall deem advisable in the best interests of the Lenders.

11.6    Non-Reliance on Administrative Agent and Other Lenders.    Each Lender expressly acknowledges that neither the Administrative Agent nor any of its officers, directors, employees, agents, attorneys-in-fact or Affiliates has made any representations or warranties to it and that no act by the Administrative Agent hereinafter taken, including any review of the affairs of the Borrower or any other Loan Party, shall be deemed to constitute any representation or warranty by the Administrative Agent to any Lender. Each Lender represents to the Administrative Agent that it has, independently and without reliance upon the Administrative Agent or any other Lender, and based on such documents and information as it has deemed appropriate, made its own appraisal of and investigation into the business, operations, property, financial and other condition and creditworthiness of the Borrower and the other Loan Parties and made its own decision to make its Loans hereunder and enter into this Agreement. Each Lender also represents that it will, independently and without reliance upon the Administrative Agent or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit analysis, appraisals and decisions in taking or not taking action under this Agreement and the other Loan Documents, and to make such investigation as it deems necessary to inform itself as to the business, operations, property, financial and other condition and creditworthiness of the Borrower. Except for notices, reports and other documents expressly required to be furnished to the Lenders by the Administrative Agent hereunder or under the other Loan Documents, the Administrative Agent shall not have any duty or responsibility to provide any Lender with any credit or other information concerning the business, operations, property, condition (financial or otherwise), prospects or creditworthiness of the Borrower or any other Loan Party which may come into the possession of the Administrative Agent or any of its officers, directors, employees, agents, attorneys-in-fact or Affiliates.

11.7    Indemnification.    The Lenders agree to indemnify the Administrative Agent in its capacity as such (to the extent not reimbursed by the Borrower and without limiting the obligation of the Borrower to do so), ratably according to their respective Credit Exposure Percentages in effect on the date on which indemnification is sought (or, if indemnification is sought after the date upon which the Commitments shall have terminated and the Loans shall have been paid in full, ratably in accordance with such Credit Exposure Percentages immediately prior to such date), from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or the reasonable and documented fees and disbursements of counsel (including the allocated fees and expenses of in-house

-61-

                                                                                                  PP-TRBK0000093

counsel) or disbursements of any kind whatsoever which may at any time (including, without limitation, at any time following the payment of the Loans) be imposed on, incurred by or asserted against the Administrative Agent in any way relating to or arising out of, the Revolving Credit Commitments, this Agreement, any of the other Loan Documents or any documents contemplated by or referred to herein or therein or the transactions contemplated hereby or thereby or any action taken or omitted by the Administrative Agent under or in connection with any of the foregoing; provided that no Lender shall be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements which are found by a final and nonappealable decision of a court of competent jurisdiction to have resulted solely from the Administrative Agent's gross negligence or willful misconduct. The agreements in this Section shall survive the payment of the Loans and all other amounts payable hereunder. If any indemnity furnished to the Administrative Agent for any purpose shall, in the opinion of the Administrative Agent, be insufficient or become impaired, the Administrative Agent may request additional indemnity and cease, or not commence, to do the acts indemnified against until such additional indemnity is furnished.

        11.8    Administrative Agent in Its Individual Capacity. The Administrative Agent and its Affiliates may make loans to, accept deposits from and generally engage in any kind of business with the Borrower and the other Loan Parties as though the Administrative Agent were not the Administrative Agent hereunder and under the other Loan Documents. With respect to the Loans made by it, the Administrative Agent shall have the same rights and powers under this Agreement and the other Loan Documents as any Lender and may exercise the same as though it were not the Administrative Agent, and the terms "Lender" and "Lenders" shall include the Administrative Agent in its individual capacity.

        11.9    Successor Administrative Agent. (a) The Administrative Agent may resign at any time by giving not less than ten days prior written notice thereof to the Lenders and the Borrower. Upon any such resignation, the Required Lenders shall have the right to appoint a successor Administrative Agent; provided that, so long as no Default or Event of Default has occurred and is continuing, the Borrower shall have the right to consent to any such successor Administrative Agent, such consent not to be unreasonably withheld.

        (b)    If no successor Administrative Agent shall have been so appointed by the Required Lenders within thirty days after the resigning Administrative Agent's giving of notice of resignation, then the resigning Administrative Agent may appoint, on behalf of the Borrower and the Lenders, a successor Administrative Agent, which is acceptable to the Required Lenders. In the event that the Administrative Agent is unable to appoint a replacement successor within such thirty day period after using reasonable efforts, the Administrative Agent may nonetheless resign by delivering a written resignation to the Lenders and the Borrower; provided that in such circumstances, and unless and until a successor Administrative Agent is appointed, the Administrative Agent shall remain Administrative Agent solely for the purpose of serving as secured party of record with respect to the Collateral, its sole duty in that capacity shall be to take such ministerial actions as it shall be directed to take by the Required Lenders (including, without limitation, the execution and delivery of documents or instruments relating to the Collateral), and the Administrative Agent shall be entitled to reimbursement from the Borrower for its out-of-pocket costs and expenses and reasonable compensation from the Borrower for its services. If the Administrative Agent has resigned and no successor Administrative Agent has been appointed, subject to the preceding sentence, the Lenders shall perform the duties of the Administrative Agent hereunder, and the Borrower shall make all payments in respect of the Obligations to the applicable Lender and shall deal directly with the Lenders and the Lenders shall be entitled to exercise all the rights provided to Administrative Agent hereunder and all Lenders shall have

\_ 0

Confidential                                            PP-TRBK0000094

the rights, benefits, indemnities and exculpations and other limitations of liability to which Administrative Agent is entitled under Section 11 of this Agreement.

(c)    No successor Administrative Agent shall be deemed to be appointed hereunder until such successor Administrative Agent has accepted the appointment in writing. Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent and upon the execution and filing of such financing statements, or amendments thereto, and such other instruments and notices, as may be necessary or desirable or as the Required Lenders may request, in order to continue the perfection of the Liens granted or purported to be granted under the Security Documents, such successor Administrative Agent shall succeed to and become vested with all the rights, powers, discretion, privileges and duties of the resigning Administrative Agent, and the resignation of the Administrative Agent shall then be effective for all purposes. Upon the effectiveness of the resignation of the Administrative Agent, the resigning Administrative Agent shall be discharged from its duties and obligations under the Loan Documents. After the effectiveness of the resignation of an Administrative Agent, the provisions of this Section 11 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was acting as the Administrative Agent under this Agreement."

(d)    The Required Lenders may replace the Administrative Agent with a successor Administrative Agent, with or without cause, at any time by giving not less than 30 days prior written notice thereof to the Administrative Agent and the Borrower.

11.10    _Authorization to Release Liens_. The Administrative Agent is hereby irrevocably authorized by each of the Lenders to release any Lien covering any property of the Borrower or any of its Subsidiaries or any Loan Party that is the subject of a sale, lease, assignment or other disposition which is permitted by this Agreement or any other Loan Document or which has been consented to in accordance with Section 12.1.

11.11    _The Arranger; the Documentation Agents_.    Neither the Arranger nor the Documentation Agents, in their respective capacities as such, shall have any duties or responsibilities, and shall incur no liability, under this Agreement and the other Loan Documents.

11.12    _The Administrative Agent and the Secured Parties_.    Notwithstanding that the Administrative Agent is named in one or more of the Security Documents as agent for Qualified Counterparties as well as for the Lenders, each Lender agrees, on behalf of itself and any affiliate thereof that may at any time be a Qualified Counterparty under any Specified Hedge Agreement, that the Administrative Agent (i) shall have no duty or obligation whatsoever to any Qualified Counterparty under any Specified Hedge Agreement, and (ii) shall have no duty or obligation to any Qualified Counterparty under any Security Documents other than the obligation to deliver to such Qualified Counterparty its ratable share (as determined by the Administrative Agent) of any proceeds received by the Administrative Agent under the Security Documents upon the exercise by the Administrative Agent of its remedies thereunder. Without limiting the generality of the foregoing, each Lender agrees, on behalf of itself and any affiliate thereof that may at any time be a Qualified Counterparty under any Specified Hedge Agreement, that (i) the Administrative Agent shall incur no liability to any Qualified Counterparty as a result of any release by the Administrative Agent of any Collateral or Subsidiary Guarantors under any Security Document or any other action or inaction by the Administrative Agent under any Security Document and (ii) the Administrative Agent shall be entitled to the same exculpations and protections, in respect of the Qualified Counterparties, as it is entitled to with respect to the Lenders pursuant to the other provisions of this Section 11 (other than Section 11.7), mutatis mutandis.

\_0

-63-

SECTION 12.  MISCELLANEOUS

12.1    Amendments and Waivers.    Neither this Agreement nor any other Loan Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this Section 12.1. The Required Lenders may, or, with the written consent of the Required Lenders (except with respect to modifications to the Guarantee and the Security Documents contemplated under Section 8.10), the Administrative Agent may, from time to time, (a) enter into with the Borrower written amendments, supplements or modifications hereto and to the other Loan Documents for the purpose of adding any provisions to this Agreement or the other Loan Documents or changing in any manner the rights of the Lenders or of the Borrower hereunder or thereunder or (b) waive, on such terms and conditions as the Required Lenders or the Administrative Agent, as the case may be, may specify in such instrument, any of the requirements of this Agreement or the other Loan Documents or any Default or Event of Default and its consequences; provided, however, that a Supplemental Agent's consent shall in no way be necessary for an amendment, modification or waiver to be declared effective and valid other than for amendments, modifications or waivers concerning Section 11, this Section 12.1 and Section 12.5; and provided, further, that no such waiver and no such amendment, supplement or modification shall (i) reduce the amount or extend the scheduled date of maturity of any Loan or of any installment thereof, or reduce the stated rate of any interest or fee payable hereunder or extend the scheduled date of any payment thereof, or increase the amount or extend the expiration date of any Lender's Revolving Credit Commitment, in each case without the consent of each Lender affected thereby, or (ii) amend, modify or waive any provision of this Section 12.1 or reduce the percentage specified in the definition of Required Lenders or Required Prepayment Lenders, or consent to the assignment or transfer by the Borrower of any of its rights and obligations under this Agreement and the other Loan Documents or release all or substantially all of the Collateral or release all or substantially all of the Subsidiary Guarantors from their obligations under the Guarantee, in each case without the written consent of each of the Lenders directly affected thereby, or (iii) amend, modify or waive any condition precedent to any extension of credit under the Revolving Credit Facility set forth in Section 7.2 (including, without limitation, in connection with any waiver of an existing Default or Event of Default) without the consent of the Majority Facility Lenders with respect to the Revolving Credit Facility, or (iv) reduce the percentage specified in the definition of Majority Facility Lenders with respect to any Facility without the written consent of all Lenders under such Facility, or (v) amend, modify or waive any provision of Section 5.9(b) without the consent of the Majority Facility Lenders of the Term Loan Facility and each Lender directly affected thereby, or amend, modify or waive any provision of Section 5.6(b), (c) or (d) without the consent of the Required Prepayment Lenders, or (vi) amend, modify or waive any provision of Section 11 without the written consent of the then Administrative Agent.  Any such waiver and any such amendment, supplement or modification shall apply equally to each of the Lenders and shall be binding upon the Borrower, the Lenders, the Administrative Agent and all future holders of the Loans. In the case of any waiver, the Borrower, the Lenders and the Administrative Agent shall be restored to their former positions and rights hereunder and under the other Loan Documents, and any Default or Event of Default waived shall be deemed to be cured and not continuing; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon.

12.2    Notices.    All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) in the case of delivery by hand, when delivered, (b) in the case of delivery by mail, five (5) days after being sent by certified or registered mail, return receipt requested, postage prepaid, or (c) in the case of delivery by facsimile transmission, when sent and receipt has been electronically confirmed, addressed as follows in the case of the Borrower and the Administrative Agent, and as set forth in Schedule 1.0 in the case of the other parties hereto, or to such other address as may be hereafter notified by the respective parties hereto:

\ 0

-64-

Confidential                                                                                                    PP-TRBK0000096

Schedule 1.0

## LENDERS, COMMITMENTS AND APPLICABLE LENDING OFFICES

| Lender and Lending Offices | Tranche A Term Loan | Tranche B Term Loan | Revolving Credit Loan |
|---|---|---|---|
| **Ark II CLO 2001-1, Limited** | ████████ | | ████████ |
| Applicable Lending Offices: | | | |
| Base Rate Loans:<br><br>Ark II CLO 2001-1, Limited<br>c/o U.S. Bank<br>One Federal Street<br>3rd Floor<br>Attention: Paul Bavis<br>Boston, MA  02110<br>FFC: ARK II<br>Phone:  (617) 603-6421<br>Fax:    (617) 603-6639 | | | |
| Eurodollar Loans:<br><br>Ark II CLO 2001-1, Limited<br>c/o U.S. Bank<br>One Federal Street<br>3rd Floor<br>Attention: Paul Bavis<br>Boston, MA  02110<br>FFC: ARK II<br>Phone:  (617) 603-6421<br>Fax:    (617) 603-6639 | | | |
| **Ark Investment Partners II, L.P.** | ████████ | | ████████ |
| Applicable Lending Offices: | | | |
| Base Rate Loans:<br><br>Ark Investment Partners II, L.P.<br>c/o Patriarch Partners III, LLC<br>40 Wall Street, 25th Floor<br>New York, New York  10005<br>Attention: Lynn Tilton<br>Phone:  (212) 825-0550<br>Fax:    (212) 825-2038 | | | |

CHAR2\880135v4

Confidential

| | | | |
|---|---|---|---|
| Eurodollar Loans:<br><br>    Ark Investment Partners II, L.P.<br>    c/o Patriarch Partners III, LLC<br>    40 Wall Street, 25th Floor<br>    New York, New York 10005<br>    Attention: Lynn Tilton<br>    Phone: (212) 825-0550<br>    Fax:    (212) 825-2038 | | | |
| First Dominion Funding I<br><br>Applicable Lending Offices:<br><br>Base Rate Loans:<br><br>    First Dominion Funding I<br>    c/o Credit Suisse Asset Management<br>    466 Lexington Avenue<br>    14th Floor<br>    New York, NY 10017<br>    Attention: Nicholas Milovich<br>    Telephone: (212) 201-9039<br>    Telecopy: (646) 658-0728<br><br>Eurodollar Loans:<br><br>    First Dominion Funding I<br>    c/o Credit Suisse Asset Management<br>    466 Lexington Avenue<br>    14th Floor<br>    New York, NY 10017<br>    Attention: Nicholas Milovich<br>    Telephone: (212) 201-9039<br>    Telecopy: (646) 658-0728 | ████████ | | ████████ |

CHAR2\880135v4

Confidential

**First Dominion Funding II**

Applicable Lending Offices:

Base Rate Loans:

> First Dominion Funding II
> c/o Credit Suisse Asset Management
> 466 Lexington Avenue
> 14th Floor
> New York, NY 10017
> Attention: Nicholas Milovich
> Telephone: (212) 201-9039
> Telecopy: (646) 658-0728

Eurodollar Loans:

> First Dominion Funding II
> c/o Credit Suisse Asset Management
> 466 Lexington Avenue
> 14th Floor
> New York, NY 10017
> Attention: Nicholas Milovich
> Telephone: (212) 201-9039
> Telecopy: (646) 658-0728

**CSAM Funding II**

Applicable Lending Offices:

Base Rate Loans:

> CSAM Funding II
> c/o Credit Suisse Asset Management
> 466 Lexington Avenue
> 14th Floor
> New York, NY 10017
> Attention: Nicholas Milovich
> Telephone: (212) 201-9039
> Telecopy: (646) 658-0728

Eurodollar Loans:

> CSAM Funding II
> c/o Credit Suisse Asset Management
> 466 Lexington Avenue
> 14th Floor
> New York, NY 10017
> Attention: Nicholas Milovich
> Telephone: (212) 201-9039
> Telecopy: (646) 658-0728

CHAR2\880135v4

Confidential

| | | | |
|---|---|---|---|
| **CSAM FUNDING III**<br><br>Applicable Lending Offices:<br><br>Base Rate Loans:<br><br>     CSAM Funding III<br>     c/o Credit Suisse Asset Management<br>     466 Lexington Avenue<br>     14th Floor<br>     New York, NY 10017<br>     Attention: Nicholas Milovich<br>     Telephone: (212) 201-9039<br>     Telecopy: (646) 658-0728<br><br>Eurodollar Loans:<br><br>     CSAM Funding III<br>     c/o Credit Suisse Asset Management<br>     466 Lexington Avenue<br>     14th Floor<br>     New York, NY 10017<br>     Attention: Nicholas Milovich<br>     Telephone: (212) 201-9039<br>     Telecopy: (646) 658-0728 | ▇▇▇▇ | ▇▇▇▇ | ▇▇▇▇ |
| **ATRIUM CDO**<br><br>Applicable Lending Offices:<br><br>Base Rate Loans:<br><br>     Atrium CDO<br>     c/o Credit Suisse Asset Management<br>     466 Lexington Avenue<br>     14th Floor<br>     New York, NY 10017<br>     Attention: Nicholas Milovich<br>     Telephone: (212) 201-9039<br>     Telecopy: (646) 658-0728<br><br>Eurodollar Loans:<br><br>     Atrium CDO<br>     c/o Credit Suisse Asset Management<br>     466 Lexington Avenue<br>     14th Floor<br>     New York, NY 10017<br>     Attention: Nicholas Milovich | ▇▇▇▇ | ▇▇▇▇ | ▇▇▇▇ |

CHAR2\880135v4

Confidential

| | | | |
|---|---|---|---|
| Telephone: (212) 201-9039<br>Telecopy: (646) 658-0728 | | | |
| **ZOHAR CDO 2003-1, Limited**<br><br>Applicable Lending Offices:<br><br>Base Rate Loans:<br><br>      Zohar CDO 2003 1, Limited<br>      c/o U.S. Bank National Association<br>      One Federal Street, 3rd Floor<br>      Boston, Massachusetts 02110<br>      Attention:     Timothy Farrell<br>      Telephone:   (617) 603 6544<br>      Telecopier:   (503) 258-5859 | ▮▮▮ | ▮▮▮ | ▮▮▮ |
| **Total:** | ▮▮▮ | ▮▮▮ | ▮▮▮ |

CHAR2\880135v4

Confidential

SCHEDULE A TO
AMENDMENT 22
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

## Loan Outstandings

(As of January 8, 2013)

### Revolving Credit Loans

| Revolving Credit Lender | Revolving Credit Loans Outstanding |
|---|---|
| N/A |  |

### Tranche A Term Loans

| Tranche A Term Loan Lender | Tranche A Term Loans Outstanding |
|---|---|
| Ark Investment Partners II, L.P. |  |
| Zohar III, Limited |  |
| First Dominion Funding I |  |
| Credit Suisse Alternative Capital, Inc. |  |

### Tranche B Term Loans

| Tranche B Term Loan Lender | Tranche B Term Loans Outstanding |
|---|---|
| Zohar CDO 2003-1, Limited |  |

### Tranche C Term Loans

| Tranche C Term Loan Lender | Tranche C Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited |  |

### Tranche D Term Loans

| Tranche D Term Loan Lender | Tranche D Term Loans Outstanding |
|---|---|
| Zohar III, Limited |  |

### Tranche E Term Loans

| Tranche E Term Loan Lender | Tranche E Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited |  |

### Tranche F Term Loans

| Tranche F Term Loan Lender | Tranche F Term Loans Outstanding |
|---|---|
| Zohar III, Limited |  |

PP-TRBK0000166