**PROSKAUER ROSE LLP**
Michael T. Mervis
Timothy Q. Karcher
Eleven Times Square
New York, NY  10036-8299
Tel.: (212) 969-3000

Nicole A. Eichberger (*pro hac vice*)
650 Poydras Street
Suite 1800
New Orleans, LA 70130-6146
Tel.: (504) 310-2024

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ***In re*** | Chapter 7 |
| **TRANSCARE CORPORATION,** *et al.*, | Case No. 16-10407 (SMB) |
| **Debtors.**[1] | (Jointly Administered) |
| **SALVATORE LAMONICA, as Chapter 7 Trustee for the Estates of TransCare Corporation,** <u>*et al.*</u>, | Adv. Proc. No. 18-01021 |
| **Plaintiff,** | |
| v. | |
| **LYNN TILTON,** <u>*et al.*</u>, | |
| **Defendants.** | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**PARTIAL MOTION TO DISMISS CERTAIN CLAIMS ASSERTED**
<u>**IN THE CHAPTER 7 TRUSTEE'S ADVERSARY COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 6

    I.    THE TRUSTEE HAS NOT ALLEGED AN INJURY-IN-FACT THAT
        SUPPORTS ARTICLE III STANDING TO ASSERT CLAIMS ARISING
        FROM ALLEGED WARN LIABILITY ...................................................................... 8

    II.    LUMPING DEFENDANTS TOGETHER WITHOUT SPECIFYING THE
        PARTICULAR CONDUCT ENGAGED IN BY EACH VIOLATES
        RULES 8 AND 9(B) OF THE FEDERAL RULES OF CIVIL
        PROCEDURE ........................................................................................................... 10

    III.    THE TRUSTEE FAILS TO STATE A CLAIM FOR FRAUDULENT
         TRANSFER .............................................................................................................. 14

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................6, 7

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
   961 F.2d 32 (2d Cir. 1992)..............................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................6, 14

*Bezuszka v. L.A. Models, Inc.*,
   No. 04 CIV. 7703 (NRB), 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) .............................11

*Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*,
   655 F. Supp. 2d 177 (E.D.N.Y. 2009) ...............................................................................11

*Clapper v. Amnesty Int'l USA*,
   586 U.S. 398 (2013)........................................................................................................8

*Cornwall Mgmt. Ltd. v. Kambolin*,
   140 A.D.3d 507 (1st Dep't 2016) ......................................................................................12

*Dover Ltd. v. A.B. Watley, Inc.*,
   No. 04 CIV. 7366 (FM), 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006)..............................13

*Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006–3*,
   825 F. Supp. 2d 1082 (D.N.M. 2011) ...............................................................................13

*In re Golden Guernsey Dairy LLC*,
   548 B.R. 410 (Bankr. D. Del. 2015) ..................................................................................10

*In re McCann, Inc.*,
   318 B.R. 276 (Bankr. S.D.N.Y. 2004) (Bernstein, J.) .........................................................16

*In re Petition of Alfredo Jorge Garcia Avila as Foreign Rep. of Grupo Tribasa, S.A., de C.V.*,
   296 B.R. 95 (Bankr. S.D.N.Y. 2003) (Bernstein, J.) ...........................................................12

*In re Simplexity LLC*,
   No. 14-cv-10569(KG), 2017 WL 65069 (Bankr. D. Del. Jan. 5, 2017) ..................................10

*Jackson v. First Fed. Sav. of Ark., F.A.*,
   709 F. Supp. 863 (E.D. Ark. 1988)....................................................................................13

# TABLE OF AUTHORITIES
### (Cont'd)

**Page(s)**

*King Cty., Wash. v. IKB Deutsche Industriebank AG,*
  863 F. Supp. 2d 288 (S.D.N.Y. 2012), *rev'd in part*, No. 09 CIV. 8387 SAS,
  2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012).....................................................................12

*Littlejohn v. City of N.Y.,*
  795 F.3d 297 (2d Cir. 2015)..................................................................................................6, 7

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).....................................................................................................................8

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
  312 U.S. 270 (1941).....................................................................................................................9

*Multi-Juice, S.A. v. Snapple Beverage Corp.,*
  No. 02 CIV. 4635(RPP), 2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003)..............................13

*Pall v. KPMG, LLP,*
  No. 3:03CV00842(AWT), 2006 WL 2800064 (D. Conn. Sept. 29, 2006)...........................9

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Secs. Litig.),*
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................................15

*San Diego Unified Port Dist. v. Monsanto Co.,*
  No. 15-cv-278, 2018 WL 626315 (S.D. Cal. Jan. 30, 2018) ...............................................10

*Sicoli v. Hartford Ins. Co. of Ill.,*
  No. 12-CV-00508(S)(M), 2013 WL 12309859 (W.D.N.Y. July 3, 2013) ............................11

*SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.,*
  343 F. App'x 629 (2d Cir. 2009) .............................................................................................9

*Waite v. Schoenbach,*
  No. 10 Civ. 3439 (RMB), 2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010)...........................12

**STATUTES**

11 U.S.C. § 548(a)(1)(A) ...........................................................................................................14

11 U.S.C. § 704(a)(1)....................................................................................................................1

28 U.S.C. § 2202 ("Declaratory Judgment Act") ......................................................................8

29 U.S.C. 2100 et. Seq. ("WARN Act")...............................................................................3, 4, 9

N.Y. Debt. & Cred. § 276 ...........................................................................................................14

## TABLE OF AUTHORITIES
(Cont'd)

**Page(s)**

**RULES**

Fed. R. Civ. P. 8 ......................................................................................................... *passim*

Fed. R. Civ. P.  8(a) ....................................................................................................11, 17

Fed. R. Civ. P. 8(a)(2) ......................................................................................................14

Fed. R. Civ. P. 8(d)(3) ................................................................................................15, 16

Fed. R. Civ. P. 8(e)(2) ................................................................................................15, 16

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ..............................................................................................10, 17

Fed. R. Civ. P. 12(b)(6) ........................................................................................10, 17, 18

Fed. R. Civ. P. 13 ................................................................................................................9

Fed. R. Civ. P. 13(g) ...........................................................................................................9

Fed. R. Civ. P. 14 ................................................................................................................9

Defendants[1] respectfully submit this reply (the "Reply") to the *Plaintiff's Opposition to Defendants' Partial Motion to Dismiss* (the "Opposition") and in further support of their Motion,[2] seeking the dismissal of certain claims, or portions of claims, that have been asserted in the adversary complaint (the "Complaint") filed by Salvatore LaMonica, the chapter 7 Trustee ("Trustee") of the jointly-administered estates of TransCare Corporation and its debtor affiliates (collectively, "TransCare").[3]   In support of their Reply, Defendants respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.      Consistent with the Federal Rules of Civil Procedure, Bankruptcy Rules, and provisions of the Bankruptcy Code, in bringing their Motion the Defendants appropriately seek to streamline this meritless adversary proceeding.   That will help the Trustee to administer and close the estate "as expeditiously as is compatible with the best interests of parties in interest" while protecting the interests of the Defendants from vague, implausible, and unsustainable allegations.   *See* 11 U.S.C. § 704(a)(1) (outlining the duties of a chapter 7 trustee).

2.      As is made clear in the Trustee's Opposition, the Trustee wants to live by his own rules.   For example, and as is discussed more fully below, while Fed. R. Civ. P. 8 dictates that actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged, the Trustee *repeatedly* lumps together multiple Defendants. Accordingly, when the Trustee alleges that "*Patriarch* knowingly and in bad faith assisted

---

[1] The Defendants in this adversary proceeding are:   Lynn Tilton, Patriarch Partners Agency Services, LLC ("PPAS"), Patriarch Partners, LLC ("Patriarch Partners"), Patriarch Partners Management Group, LLC ("PPMG"), Ark II CLO 2001-1, Limited ("ARK II"), Ark Investment Partners II, L.P. ("AIP II"), LD Investments, LLC, Patriarch Partners II, LLC, Patriarch Partners III, LLC , Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Transcendence Transit, Inc. ("TT"), and Transcendence Transit II, Inc. ("TT II", and together with TT, "Transcendence").   As used herein, the term "Entity Defendants" refers collectively to all defendants except Ms. Tilton.

[2] Capitalized terms utilized herein, but not defined, shall have the meaning, or meanings, ascribed to them in the Motion.

[3] The names of each of the debtors are set forth in footnote 1 of the Complaint ("Compl.") (Dkt. No. 1).

Tilton's breaches of fiduciary duties….," the Defendants appropriately ask: "Who is the Trustee referring to and what did each entity do to assist?"[4]   Likewise, when the Trustee alleges "*Patriarch* was in complete domination of the finances, policy, and business practices of TransCare," the Defendants understandably ask: "Who is he talking about?  All of them (and, if so, what did each one of them do specifically)?  Even the Defendants that the Trustee knows and expressly concedes did not exist during the approximately two years covered by the Complaint?  Even the Defendants that are mere investment vehicles and could not plausibly have taken the actions complained of?"

3.     Compliance with the Rules is not optional.   Accordingly, in their Motion, the Defendants seek dismissal of those claims for which the Trustee has utterly failed to make specific, plausible allegations against specific individual defendants as required by the Rules. Instead, in his Opposition the Trustee retrenches and repeats 10 pages of alleged "facts" (with citations to his Complaint), in which he (again and again) uses the term "Patriarch" to refer generally to an undifferentiated group of twelve different entities, as if they were the alter-ego of one another (although in his Complaint the Trustee never uses that term and never pleads the elements necessary to make that claim, nor could he).

4.     But rather than comply with the Rules, and notwithstanding the fact that TransCare had its own C-level officers and hired the Carl Marks firm to help guide it prior to the bankruptcy filing, the Trustee simply blames the "Defendants" – all of them – for every misfortune that befell TransCare.

---

[4] Defendants have not sought (at this time) to dismiss those claims and allegations that comply with the Rules. While Defendants submit that this entire suit is frivolous, Defendants will respond to such claims and allegations in due course and reserve all their rights to do so, including by motion for summary judgment at the appropriate time. Thus, the Trustee's statement that by not moving to dismiss the Complaint in its entirety, the Defendants concede the "core allegations state viable causes of action that cannot be resolved without trial" (Opposition at ¶ 1), is as incorrect as it is hyperbolic.

5.      As set forth in the Motion and herein, the Trustee conveniently ignores the practical effects of external market forces, the inability of TransCare to access capital markets, and other factors, such as the stated reluctance of TransCare's secured lenders (including Wells Fargo) to provide additional support for TransCare, which forced the Debtors to commence bankruptcy proceedings.[5]  Rather than acknowledging the simplest, most plausible explanation (i.e., that the company was struggling to survive, could not raise money, and could not be sold for more than the amount of its secured debt), the Trustee imagines a cloak and dagger, conspiracy-laden version of supposed "facts" where employees are "stealing" property in the face of a bankruptcy stay rather than simply trying to safeguard it.

6.      Perhaps most fatal to the Trustee's pleading is his apparent ignorance of *his own conduct*, including (i) the statements in his filed answer to the *Ien* WARN Litigation[6] complaint, which completely contradict the notion that TransCare's failure was the foreseeable result of Defendants' actions, and (ii) his agreement (by stipulation with PPAS) to (a) sell the very same assets allegedly "stolen" by the Defendants and (b) *give the lion's share of the sale proceeds to the Defendants*.  For the reasons set forth in the Motion, and reiterated below, the Trustee lacks standing to bring claims for damages related to the *Ien* WARN Litigation, particularly given the fact that he has consistently and repeatedly denied any liability.

7.      Specifically, in denying any and all liability on the part of TransCare in the *Ien* WARN Litigation the Trustee stated:

> To the extent the Debtors were required to give notice of termination to Plaintiff and/or the putative class members under the WARN Act, the Debtors were unable to give such notice

---

[5] For example, the Trustee simply ignores the fact that TransCare's secured lenders, including Wells Fargo, "had a first lien on all of TransCare's assets and account receivables" (Compl. ¶ 32) and that neither Wells Fargo, nor any other lender, would provide any further financing to TransCare.

[6] The *Ien* WARN Litigation is styled *Shameeka Ien v. Transcare Corp., et al.*, No. 16-01033 (SMB).

because, pursuant to 29 U.S.C. § 2102(b)(2)(A) and upon information and belief, the terminations *were caused by business circumstances that were not reasonably foreseeable* at the time that notice would have been required, and the WARN Act claim is therefore barred.

…

To the extent the Debtors were required to give notice of termination to Plaintiff and/or the putative class members under the WARN Act, the Debtors were permitted, pursuant to 29 U.S.C. § 2102(b)(1) and upon information and belief, to order a closing or layoff without providing such notice because, *as of the time notice would have been required, the Debtors were actively seeking capital and/or business which, if obtained, would have enabled the Debtors to avoid or postpone the closing or layoff and the Debtors reasonably and in good faith believed that giving the required notice would have precluded them from obtaining the needed capital and/or business.* The WARN Act claim is therefore barred.

…

Plaintiff's claims are barred under the *unforeseeable business circumstances* exception to the NY WARN Act, 12 N.Y.C.R.R. § 921-6.3, because, upon information and belief, *the closing or layoff was caused by business circumstances that were not reasonably foreseeable at the time that notice would have been required.*"

*Ien* WARN Litigation, No. 16-01033 (SMB), Answer to Complaint, Seventh, Eighth, Tenth Affirmative Defenses, Dkt. No. 24, at 18-20, filed June 3, 2016 (emphasis added).

8.    Likewise, the allegations that value was somehow taken from the Debtors' estates through the conduct outlined in the Opposition is completely belied by the fact that the Trustee entered into a comprehensive stipulation with PPAS and Transcendence Transit, Inc. to permit the sale of the very same assets at an auction conducted by the Trustee's auctioneer, with the proceeds being set aside to satisfy the Debtors' obligations to PPAS.[7]  Pursuant to the stipulation

---

[7] The Trustee attached as Exhibit A to his Opposition an email chain, dated February 25, 2016, among TransCare and Patriarch Partners' employees.  The email actually supports the Defendants.  It details how ambulances (in which Ark II and AIP had a security interest) were reportedly being abandoned in the street, and the efforts of TransCare and Patriarch Partners' employees to safeguard the assets and prevent loss.  The Trustee himself personally represented to this Court at the hearing on the Trustee's Motion to Authorize Continued Operation of Debtors' Business that when TransCare ceased operations "vehicles were subject to not being secured, being damaged, being abandoned, and there were 140 Access-A-Ride vehicles out there on the streets with very disgruntled employees driving them, and the City was very concerned about what was going to happen to those . . .

and agreed order, 80% of the proceeds went to satisfy the claims of PPAS as administrative agent (the rest went to the auctioneer, Trustee, and to satisfy other costs of the Estate).  *See Stipulation Respecting the Sale of Certain Personal Property*, Case. No. 16-10407, Dkt. No. 52. The Trustee's allegations regarding the disposition of these assets – including the nasty, false, and disparaging reference to certain current and former Patriarch Partners employees as "henchmen" who gave directions to "steal TransCare assets" – are unnecessarily insulting, defamatory and patently false.  Such rhetoric should have no place in a pleading filed in this Court.

9.      The Defendants respectfully submit that this Court should grant their Motion, as the claims at issue do not comply with the pleading Rules; upon dismissal of these claims the Complaint will be narrower, the issues clearer, and the resolution of these cases more expeditious.

---

The employee who was running the TransCare -- the paratransit operation indicated to myself and my partner, Mr. Herbst, that he was leaving the premises because he was in fear for his life; literally said that to us."  Hearing Tr. on Mot. for Joint Administration & Motion to Authorize Continued Operation of Debtors' Business, 7:12 – 8:7 (Mar. 1, 2016), Dkt. No. 29.

## **ARGUMENT**

10.     In opposing the Defendants' Motion, the Trustee relies on *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), to support the proposition that the pleading standard for a complaint is broad.   However, *Littlejohn* actually undermines the Trustee's premise and supports the Defendants' position.   As articulated by the *Littlejohn* court, and largely ignored by the Trustee, the Rule 12(b)(6) motion to dismiss standard requires that the facts asserted in the Complaint rise to the level of "plausibility" – which is more than simply rising above the level of speculation.[8]

11.     In *Littlejohn*, the Second Circuit (faced with a motion to dismiss an employment discrimination case) surveyed recent Supreme Court jurisprudence on motions to dismiss.   The case most relevant here is *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   In analyzing the standard for dismissal in *Iqbal*, the *Littlejohn* court noted that

> The Supreme Court had recently determined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that a complaint alleging an unlawful agreement in restraint of trade must include "enough factual matter (taken as true) to suggest [plausibly] that an agreement was made," *id.* at 556, 127 S.Ct. 1955, or otherwise include "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, 127 S.Ct. 1955.

12.     Applying this "plausibility" standard, the *Littlejohn* court noted that the Supreme Court's pleading requirement could be stated simply as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

---

[8]  Although at this Motion to Dismiss phase we do not address the falsity of many of the Trustee's allegations, notably, the weakness of the Trustee's fantastical allegations is illustrated by the few emails he chose to attach to his Opposition (though not the Complaint itself), which on a plain reading simply do not support his fictitious allegations.

*Littlejohn*, 795 F.3d at 309 (quoting *Iqbal,* 556 U.S. at 678).

13.     According to the *Littlejohn* court, "The *Iqbal* requirement is for facts supporting 'plausibility.'  The Supreme Court explained that '[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Littlejohn*, 795 F.3d at 310 (quoting *Iqbal*, 556 U.S. at 678).  The allegations and claims sought to be dismissed herein are simply not plausible.

14.     The Trustee has divided his Opposition into six sections, which can be summarized as follows:

> I.      The Constitution Does Not Strip the Court of Jurisdiction to Adjudicate All Damages;
>
> II.     Group Pleading;
>
> III.    Lender Liability Claims;
>
> IV.     Fraudulent Transfer States a Claim against All Defendants;
>
> V.      Equitable Subordination claims; and
>
> VI.     Trustee's objection to claims of Patriarch Partners and PPMG.

15.     Defendants believe the Motion adequately addresses each of these sections above.[9]  Nevertheless, the Defendants will address Sections I (Jurisdiction), II (Group Pleading), and IV (Fraudulent Transfer) of the Opposition in greater detail below.  Sections III (Lender Liability Claims), V (Equitable Subordination) and VI (Objection to Claims) suffer from the same group pleading deficiencies Defendants address in Point II, *infra*.

---

[9] The Defendants' Motion addresses Article III standing at pages 15-18; Group Pleading at pages 18-25 (including Lender Liability Claims); Fraudulent Transfer Claims at pages 25-28; Equitable Subordination Claims at pages 28-29; and the Trustee's Objections to Claims of Patriarch Partners and PPMG at pages 29-30.

I.      **THE TRUSTEE HAS NOT ALLEGED AN INJURY-IN-FACT THAT SUPPORTS ARTICLE III STANDING TO ASSERT CLAIMS ARISING FROM ALLEGED WARN LIABILITY**

16.     The Trustee contends that because this Court has jurisdiction to hear contingent claims, it can hear his damages claim stemming from the *Ien* WARN Litigation (even though he denies any liability for the Estate in that lawsuit).  Not so.

17.     The Article III standing doctrine limits federal court jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  In order to satisfy Article III's standing requirement, the Trustee must show he has suffered a cognizable injury in fact, among other things.  *Id.* Where, as here, the Trustee seeks damages dependent upon an outcome *in a separate pending litigation*, he must show that liability in that action is "certainly impending" or there is a "substantial risk" the alleged injury will incur.  *Clapper v. Amnesty Int'l USA*, 586 U.S. 398, 414 n.5 (2013).  The Trustee has failed to plead this.  In fact, the Trustee, who is defending TransCare's estate in the *Ien* WARN Litigation, has consistently and steadfastly *denied* any liability.

18.     Because the Trustee has not alleged (and cannot allege) that any potential recovery in the *Ien* WARN Litigation is "certainly impending" or that there is a "substantial risk" that TransCare will incur such liability, the Trustee resorts to a general discussion of circumstances in which federal courts may have jurisdiction to resolve contingent claims.  The Trustee's comparisons miss the mark.

19.     First, the Trustee relies on several decisions involving contingent claims in insurance coverage disputes.  These cases, many of which were brought under the Declaratory Judgment Act, are readily distinguishable because they do not address the "injury in fact" element for Article III standing that is at issue here.  *See Associated Indem. Corp. v. Fairchild*

*Indus., Inc*., 961 F.2d 32 (2d Cir. 1992); *Md. Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 272

(1941); *SR Int'l Bus. Ins. Co. v. Allianz Ins. Co*., 343 F. App'x 629, 632 (2d Cir. 2009).

20.     Likewise, the Trustee's discussion of a defendant's ability to assert contingent

claims under Rules 13 and 14 of the Federal Rules of Civil Procedure is similarly misplaced.

Defendants do not dispute that Rule 13(g) permits a defendant to assert *against a codefendant* a

contingent claim when the claim is asserted in the *same action* in which the defendant has been

sued.  For example, the Trustee could have attempted to assert a crossclaim for indemnification

or contribution against the Defendants in the *Ien* WARN Litigation.  The Trustee declined to do

so.  Instead, the Trustee argued, unequivocally, that there is *no WARN Act liability* (a position the

Defendants agree with).

21.     The Trustee contends that, because he may have properly asserted a contingent

crossclaim in the *Ien* WARN Litigation, he may assert a contingent claim in this separate

litigation.  The Trustee is wrong.  The availability of a claim in a related action has no bearing on

the issue of whether that claim can be properly asserted in this action.

22.     *Pall v. KPMG, LLP*, No. 3:03CV00842(AWT), 2006 WL 2800064 at *3 (D. Conn.

Sept. 29, 2006), is instructive.

> The plaintiff points to a line of cases which he claims support his
> contention that contribution claims can be considered ripe before
> underlying liability is established.  However, these cases address
> contribution claims made by third-party defendants or third-party
> plaintiffs who are joined in the action in which liability will be
> determined . . . .  [C]ontribution claims can be brought in an
> underlying action pursuant to Fed. R. Civ. P. 14.  However, the
> availability of contribution claims in a related action has no
> bearing on the issue of the ripeness of the federal contribution
> claim brought in this action. Here, because the plaintiff is
> attempting to bring a contribution claim which is contingent upon a
> finding of liability in the related actions, the injury (and
> availability of a contribution claim) depends upon the results in the
> related actions, making the contribution claim not ripe.

*Id.* at *3.  Because there has been no finding of liability in the *Ien* WARN Litigation, the claims

the Trustee alleges in this action for damages based on *potential* WARN liability are not ripe.[10]

23.    Finally, the Trustee argues that, although liability has yet to be assessed in the *Ien*

WARN Litigation, he has suffered an injury-in-fact because he has incurred costs defending the

*Ien* WARN Litigation.   The Trustee cites no legal support for this position, which cannot be

squared with certain of the holdings in the cases cited by the Defendants in their Motion.

24.    For example, in *San Diego Unified Port District v. Monsanto Co.*, No. 15-cv-278,

2018 WL 626315 (S.D. Cal. Jan 30, 2018), the court found the plaintiff failed to allege an injury

in fact notwithstanding that the plaintiff was involved in active pending litigation in which it was

necessarily incurring defense costs, including legal fees.  *See e.g. id.* at *9.  If simply incurring

litigation costs were a sufficient injury-in-fact, *San Diego Unified Port District* and cases like it

would have been decided differently.

## II.    LUMPING DEFENDANTS TOGETHER WITHOUT SPECIFYING THE PARTICULAR CONDUCT ENGAGED IN BY EACH VIOLATES RULES 8 AND 9(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

25.    The Trustee claims that his vague, generalized pleading does not run afoul of the

prohibition against group-pleading because Ms. Tilton is the alter ego of all twelve of the Entity

Defendants and, as such, the Trustee may lump them all together in each claim without

distinguishing their conduct.   Opposition at 17-19.  There are at least two fatal flaws with his

argument.

---

[10] Nor do the WARN liability decisions the Trustee references support a finding of standing.  *See In re Simplexity LLC*, No. 14-cv-10569(KG), 2017 WL 65069 (Bankr. D. Del. Jan. 5, 2017); *In re Golden Guernsey Dairy LLC*, 548 B.R. 410, 413 (Bankr. D. Del. 2015).  In each case, the court was tasked with determining the sufficiency of allegations in a complaint concerning potential WARN liability *for Rule 12(b)(6) purposes*.  Neither decision addresses a Rule 12(b)(1) motion or whether potential exposure from a pending litigation may give rise to an actual or imminent injury sufficient to confer Article III standing and are plainly off point.

26.     First, the Trustee did not plead an alter ego theory in the Complaint.   When a plaintiff attempts to impose liability "under an alter ego theory, it must plead such allegations in the body of the Complaint."  *Sicoli v. Hartford Ins. Co. of Ill.*, No. 12-CV-00508 (S)(M), 2013 WL 12309859, at *4 (W.D.N.Y. July 3, 2013) (internal quotation marks omitted).   Courts in the Second Circuit have rejected alter ego liability theories at the motion to dismiss stage when those theories were not raised in the complaint.  *See, e.g.*, *Bezuszka v. L.A. Models, Inc.*, No. 04 CIV. 7703 (NRB), 2006 WL 770526, at *10 (S.D.N.Y. Mar. 24, 2006) (rejecting argument that individual defendant could be personally liable for breach of contract claim at motion to dismiss stage where "[t]he complaint does not allege that [the defendant] was the alter ego of his companies, nor is this a case in which veil piercing is appropriate").

27.     Second, even if the Court were to liberally interpret the Complaint and find that the Trustee was making alter ego allegations without having expressly referred to the alter ego doctrine, the Trustee's allegations that Ms. Tilton dominated and controlled the Entity Defendants are insufficient to satisfy Rule 8(a), let alone the heightened requirements of Rule 9(b).  *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009) ("[a]llegations concerning the domination element are subject to the basic pleading standard of Rule 8," while "[a]llegations concerning the fraud or wrongful act element are subject to the heightened pleading standard of Rule 9(b) to the extent that they allege fraud.")

28.     At best, the Complaint alleges that Ms. Tilton exerted control over the Entity Defendants as their owner, chief executive officer, and principal/manager (Compl. ¶ 10) and that the Entity Defendants shared office space.  *Id.* ¶¶ 11-23.   These allegations to do not get the Trustee over the high hurdle New York law imposes to establish alter ego liability.   It is well established law that "[m]ere domination and control, or a parent-subsidiary relationship, is

11

insufficient" to pierce the corporate veil or establish alter ego liability. *In re Petition of Alfredo Jorge Garcia Avila as Foreign Rep. of Grupo Tribasa, S.A., de C.V.*, 296 B.R. 95, 110 (Bankr. S.D.N.Y. Aug. 20, 2003) (Bernstein, J.); *see also Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (dismissing alter-ego claim under New York law, where plaintiff relied on "unsupported assertions" that owners and officers of one company "exercised complete dominion and control" over another company; allegations "that [the companies] operate[d] at the same location and share[d] employees, officers, owners, and bank accounts"; and statements that the companies "shift[ed] money and assets between themselves ... in an effort to defraud creditors" (internal quotation marks omitted)); *Cornwall Mgmt. Ltd. v. Kambolin*, 140 A.D.3d 507, 507 (1st Dep't 2016) (bare allegations that defendants "controlled and dominated" corporation "are insufficient to state a cause of action for alter ego liability.").

29.    Moreover, certain of the cases on which the Trustee relies actually *support Defendants' argument* that the Trustee is required to provide each individual defendant with fair notice of what it is alleged to have done.  The first of these cases, *King County, Washington v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 316 (S.D.N.Y. 2012), *rev'd in part*, No. 09 CIV. 8387 SAS, 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012), involved the plaintiffs' reference to defendants "Fitch, S & P and Moody's collectively as the 'Rating Agencies'" in allegations that applied to those three defendants.  The Court held that the use of a collective term was appropriate in all allegations that *applied equally to all three defendants*.  However, the Court made clear that while group pleading could be appropriate in certain circumstances, plaintiffs still have "'an obligation to "make clear exactly who is alleged to have done what to

whom.'" *Id.* at 316 (quoting *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006–3*, 825 F. Supp. 2d 1082, 1202 (D.N.M. 2011)).

30.    The full quote from *Thornburg* is instructive :

> [P]laintiff has an obligation to 'make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against' all the bad actors.

*Genesee Cty. Emps.' Ret. Sys.*, 825 F. Supp. 2d at 1202.    That is precisely the point of Defendants' Motion and their request that the Court require the Trustee to adhere to the pleading requirements of Rule 8 and Rule 9(b).    *See also Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 CIV. 4635(RPP), 2003 WL 1961636, at *6 (S.D.N.Y. Apr. 25, 2003) (dismissing all causes of action against corporate parent, Triarc, because "bare allegations naming Defendants as 'Triarc/Snapple' are improper" where "Plaintiffs failed to separately allege facts against Triarc showing that it is liable as an entity distinct from Snapple" and "Plaintiffs concede that Plaintiffs neither alleged facts supporting an agency theory, nor stated the elements of piercing the corporate veil in order to support a theory of *respondeat superior* against Triarc as the holding company of Snapple").[11]

31.    Further, the Trustee misapprehends the allocations of burden in this matter.    The Trustee bizarrely contends that Rule 8 "does not require the Trustee to tell Tilton what herself [sic] already knows, namely which entity she used to carry out which facet of the scheme." Opposition at 19.    But Rule 8(a)(2) places an initial pleading burden on the *plaintiff* to provide "a

---

[11] Two other cases cited by the Trustee are not on point.    First, *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 CIV. 7366 (FM), 2006 WL 2987054, at *8-10 (S.D.N.Y. Oct. 18, 2006), involved a complaint in which the plaintiffs explicitly sought to hold certain defendants vicariously liable for the conduct of a third defendant under an alter ego theory.    Those defendants, in turn, moved to dismiss the alter ego claims. The case did not relate to or discuss group pleading.    Second, *Jackson v. First Federal Savings of Arkansas, F.A.*, 709 F. Supp. 863, 878 (E.D. Ark. 1988), addressed a situation where the plaintiff "does not have what may be concealed information."    No such allegation is made here, nor could it be in light of the Trustee's extensive Rule 2004 examination.

short and plain statement of the claim showing that the pleader is entitled to relief" – not the

defendants. Fed. R. Civ. P. 8(a)(2). This pleading burden includes giving each defendant "fair

notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555

(quotation marks omitted). By lumping the Entity Defendants together, the Trustee failed to give

fair notice to each Entity Defendant of the Trustee's claims and the basis for each claim asserted

against each Entity Defendant, and thus failed to meet his pleading burden. Accordingly, the

Counts containing impermissible group pleading should be dismissed.

## III.   THE TRUSTEE FAILS TO STATE A CLAIM FOR FRAUDULENT TRANSFER

32.     The Trustee does not dispute that the Complaint fails to allege any transfer of

TransCare property to Ms. Tilton or any of the Entity Defendants except PPAS. *See* Motion at

¶¶ 73-75. Nor does the Trustee dispute that, to state a claim under Section 548(a)(1)(A) of the

Bankruptcy Code or New York Debtor & Creditor Law § 276, the Trustee must allege that an

actual transfer occurred. Instead, the Trustee argues in his Opposition (rather than pleading facts

in the Complaint) that, because PPAS's alleged role was as "agent" for numerous other

defendants, the Court should simply *infer* that PPAS further conveyed estate property to each of

the other twelve defendants.[12]

33.     In other words, the Trustee contends for the first time in the Opposition that it is

plausible that PPAS passed through transfers to those on whose behalf PPAS allegedly acted,

including the other Defendants. *But that's not what the Trustee alleged in his Complaint*. In

fact, the Trustee did not even attempt to allege, even upon information and belief, that *any* estate

property was fraudulently conveyed by TransCare or PPAS to any other defendant, much less

---

[12] It is unclear if the Trustee, who interviewed Ms. Tilton personally, is confused about PPAS's role or is
misrepresenting it. PPAS is not the "agent" for numerous other Defendants; rather, PPAS is the administrative agent
under the Credit Agreement pursuant to which only two of the defendants here – Ark II and AIP – made certain
secured loans to TransCare. *See* Motion, Eichberger Decl., Ex. A, Schedule 1.0, at TRBK0000116-17.

what was conveyed.  The reason the Trustee did not make such allegations is because they are inconsistent with the Trustee's theory of the case (not to mention contrary to the Credit Agreement and reality):  the Trustee has consistently taken the position that Defendants' alleged plan to transfer TransCare assets through the strict foreclosure to Transcendence *was ineffective*. (Compl. ¶¶ 94, 95, 128).

34.     As noted above, for a pleading to survive a 12(b)(6) motion, the allegations must be "plausible."  Under what scenario is it "plausible" that TransCare assets were transferred to a third party *when the Trustee simultaneously alleges that any attempts to transfer those assets actually failed*?

35.     The Trustee argues that it is not fatal to his claims that he alleges no transfer was actually made to any Defendants other than PPAS because Rule 8(e)(2) [now Rule 8(d)(3)] allows a plaintiff to plead inconsistently.  Fed. R. Civ. P. 8(d)(3).  This argument does not work here.

36.     First, the Trustee has not actually made inconsistent allegations concerning the facts surrounding the transfer of any TransCare assets.  Nowhere in the Complaint does the Trustee allege *any* TransCare assets were actually diverted to any Defendants with the exception of PPAS.  Put differently, the Trustee has put forth just one statement of facts relating to the Transcendence Plan.

37.     Second, even if the Trustee pleaded inconsistent statements of the facts – which he did not – Rule 8(d)(3) does not grant a plaintiff "license to plead inconsistent *assertions of fact* within the allegations that serve as the factual predicates for an independent, unitary claim."  *See Rieger v. Drabinsky (In re Livent, Inc. Noteholders Secs. Litig.*), 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001).  Rule 8(d)(3) refers to statements of "separate claims" which are

permitted "regardless of consistency." Fed. R. Civ. P. 8(d)(3). In other words, Rule 8(d)(3) does

not allow a plaintiff to make inconsistent factual allegations in the *same* claim.

38.     *In re McCann, Inc.*, 318 B.R. 276, 290 (Bankr. S.D.N.Y. 2004) (Bernstein, J.) is

instructive. There, certain defendant hotel properties – Marriott, Ritz, and Luxury – moved to

dismiss constructive fraudulent transfer claims the chapter 11 trustee had asserted against them

on the ground that they contained contradictory allegations in violation of Rule 8(e)(2).

Specifically, in the Ninth, Tenth, and Eleventh Claims – brought against each of these three hotel

defendants, respectively – the trustee alleged both that another hotel defendant, Di Lido, was the

initial transferee of certain payments in dispute while simultaneously alleging that each

respective hotel defendant was also the initial transferee of the same payments. The Court held

that these inconsistent allegations could lead to the dismissal of the claims.

> The plaintiff alleged, as facts common to all claims, that Di Lido
> was the initial transferee of the payments . . . He incorporated
> those allegations into the Ninth, Tenth and Eleventh Claims
> asserted, respectively, against [Defendants] Marriot . . . Ritz, . . .
> and Luxury . . . Each of those claims also alleged that the
> particular defendant was the initial transferee . . . . the plaintiff's
> inconsistent allegations appear in the *same* claim, and are self-
> defeating.

*Id.* at 290.

39.     Like the trustee in *McCann*, the Trustee has made inconsistent allegations in the same

claim. He alleges both that (i) no transfer of TransCare property was effectively made to any of

the Defendants other than PPAS *and* (ii) simultaneously alleges, under the most favorable

reading, that it is hypothetically possible that the "strict foreclosure" was effective. Compl. ¶¶

128-29. This type of inconsistent pleading is similarly self-defeating.

40.     Finally, the Trustee argues that to the extent Rule 9(b) applies to the fraudulent

transfer claims, the Complaint satisfies the requirements of Rule 9(b). Rule 9(b) requires: "In

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." It is simply not possible that the Trustee could have satisfied 9(b) when he did not satisfy the more lenient standards of Rule 8(a).

## <u>CONCLUSION</u>

For the reasons stated herein, and in the Motion, Defendants respectfully request that the Court enter an order:

(i)    Dismissing the claims for damages arising from the *Ien* WARN Litigation alleged by the Trustee in Counts I, II, and VI of the Complaint as to all Defendants pursuant to Fed. R. Civ. P. 12(b)(1);

(ii)    Dismissing the Trustee's claims in Counts II and VI-IX of the Complaint as to the Entity Defendants for failure to comply with Fed. R. Civ. P. 8;

(iii)    Dismissing the Trustee's claims in Counts VII and VIII of the Complaint as to the Entity Defendants for failure to comply with Fed. R. Civ. P 9(b);

(iv)    Also dismissing the Trustee's claims in Counts VII and VIII of the Complaint against Ms. Tilton and the Entity Defendants other than PPAS pursuant to Fed. R. Civ. P. 12(b)(6);

(v)    Dismissing the Trustee's claims in Count III of the Complaint against Patriarch Partners pursuant to Fed. R. Civ. P. 12(b)(6);

(vi)    Dismissing the Trustee's claims in Count V of the Complaint against Patriarch Partners and PPMG pursuant to Fed. R. Civ. P. 12(b)(6); and

(vii)    Granting such other and further relief as the Court deems just and proper.

Dated: June 18, 2018                    PROSKAUER ROSE LLP

                                        By:  *Michael T. Mervis*
                                             Michael T. Mervis
                                             Timothy Q. Karcher
                                             Eleven Times Square
                                             New York, NY  10036-8299
                                             Tel.: (212) 969-3000
                                             Fax: (212) 969-2900
                                             Email: mmervis@proskauer.com
                                                tkarcher@proskauer.com

                                             Nicole A. Eichberger (*pro hac vice*)
                                             650 Poydras Street
                                             Suite 1800
                                             New Orleans, LA 70130-6146
                                             Tel.: (504) 310-2024
                                             Fax: (504) 310-2022
                                             Email: neichberger@proskauer.com

                                             *Attorneys for Defendants*