

Proskauer Rose LLP    Eleven Times Square    New York, NY 10036-8299

July 9, 2018

Michael T. Mervis
Member of the Firm
d +1.212.969.3565
f 212.969.2900
mmervis@proskauer.com
www.proskauer.com

**By ECF and FedEx**

Honorable Stuart M. Bernstein
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

       Re: <u>LaMonica v. Tilton, et al., Adv. Pro. No. 18-01021-smb</u>

Dear Judge Bernstein:

       We represent the Defendants in the above-referenced action.  We submit this letter brief in response to Plaintiff's letter brief dated June 28, 2018 (the "Trustee's Letter" or the "Letter").[1]

       In his Letter, the Trustee contends that "Tilton" may not argue she lacked discretion to waive interest payments due from the Debtors ("TransCare"), given her successful arguments in *Matter of Lynn Tilton, et al.*, SEC release No. 1182, 2017 WL 4297256 (Sept. 27, 2017) (the "ALJ Proceeding").[2]  (Trustee's Letter at 4).  In so doing, the Trustee misreads and misapprehends Defendants' motion to dismiss, and continues to improperly conflate the fourteen (14) separate Defendants named in this action.

       By way of background, the ALJ Proceeding was commenced on March 30, 2015 when the SEC filed an "Order Instituting Proceedings" against Ms. Tilton as well as Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners, XIV, LLC and Patriarch Partners XV, LLC (collectively, the "Collateral Managers") alleging certain violations of the Investment Advisors Act of 1940 and the Investment Company Act of 1940 in connection with certain disclosures regarding secured loans made by investment funds known as the "Zohar Funds." Among other things, the SEC alleged that in their reports to Zohar Fund investors the Collateral Managers (which are owned and controlled by Ms. Tilton, and for which she served as Manager) mis-categorized loans as "performing" loans where full stated interest payments had not been made by the borrowers, rather than categorizing them as "defaulted."  In defending against the SEC's complaint, Ms. Tilton and the Collateral Managers argued that they had discretion in making these categorizations and that the fund indentures gave them broad authority to amend or modify the terms of Zohar Fund loans and waive and defer interest such that the loans were not in default.  Moreover, they argued the investors in the Zohar Funds could readily see in the

---

[1] Capitalized terms used but not defined herein have the meaning given to them in Defendants' Motion to Dismiss [Dkt. No. 11].

[2] While it is unclear whether the Trustee intends "Tilton" to refer solely to defendant Lynn Tilton, or more generally to all of the Defendants, we will address both potential circumstances herein.

**Proskauer≫**

Honorable Stuart M. Bernstein
July 9, 2018
Page 2

reports provided by the Collateral Managers that full stated interest was not being paid on certain loans categorized as "performing." After a multi-week trial in fall 2016, on September 27, 2017 ALJ Carol Fox Foelak issued a decision dismissing each and every claim brought by the SEC against Ms. Tilton and the Collateral Managers in full (the "ALJ Decision"). No appeal was taken by the SEC and the decision is now final.

It is undisputed that Ms. Tilton, in her role as Manager of the Collateral Managers, had the ability to amend and modify the terms of credit agreements to which the Zohar Funds were a party and to defer and waive Zohar-related interest.[3] Neither Ms. Tilton nor the Collateral Managers have asserted otherwise in this or any other case.

In their Motion to Dismiss, the Defendants noted that *defendant PPAS*, the administrative agent under the Credit Agreement between TransCare, the Zohar Funds and other lenders, could not waive interest payments due from TransCare. In that regard, in Paragraph 30 of his Complaint the Trustee wrongly alleges that PPAS, "could waive TransCare's payment of principal or interest." Complaint ¶ 30. This is untrue and, accordingly, in their Motion to Dismiss Defendants correctly asserted that PPAS could not waive interest, citing the relevant section of the TransCare Credit Agreement. The Trustee apparently misread or misinterpreted this statement regarding PPAS as an assertion that none of the 14 Defendants could waive any interest under the TransCare Credit Agreement – including interest payments due to the Zohar Funds.

If anything, the Trustee's judicial estoppel argument and his blanket reference to "Tilton" brightly highlights the overriding problem with his Complaint: the improper and unwarranted conflation of 14 separate Defendants with different corporate identities and forms, functions, duties and obligations.[4] The inescapable flaw in the Trustee's approach is that he fails to recognize each Defendant stood in a different relationship to TransCare. The Trustee further fails to recognize the different positions that Ms. Tilton herself held vis-à-vis TransCare (e.g. Board member, Manager of the Collateral Managers, PPAS, PPMG, etc.) and that these different positions had different rights, duties and obligations.

This matters, because only 5 of the 14 Defendants – Ms. Tilton and the Collateral Managers – were parties to the ALJ Proceeding. As a result, the Trustee wholly misrepresents the consequences of the ALJ Decision as it relates to this case and to the TransCare Credit Agreement. The ALJ Decision has no relation to the rights or conduct of (i) Defendants PPAS, PPMG, Ark II, AIP, LD Investments, LLC, Patriarch Partners II, LLC, Patriarch Partners III,

---

[3] And, in fact, she did so to the benefit of TransCare. For example, on September 1, 2015, Ms. Tilton, in her role as Manager of the Collateral Managers, caused the Zohar Funds and AIP to enter into an amendment to the Credit Agreement that *lowered the interest rates* on those tranches of Loans for which AIP and the Zohar Funds were the sole lenders. *See* Amendment No. 28 to the Credit Agreement, dated September 1, 2015.

[4] He does this even though, during oral argument on Defendants' Motion to Dismiss, his counsel acknowledged that the Trustee is not making an alter ego argument in this case. June 21, 2018 Hr'g Tr. at 30:19 – 30:25.

**Proskauer»**

Honorable Stuart M. Bernstein
July 9, 2018
Page 3

LLC, Transcendence Transit and Transcendence Transit II – who were not parties to the ALJ Proceeding; (ii) TransCare's non-Zohar Fund lenders such as Credit Suisse Alternative Capital, Inc. and First Dominion Funding I (the "Outside Lenders"), each of whom were parties to the Credit Agreement and were neither controlled by nor affiliated with Ms. Tilton or the Collateral Managers; or (iii) Wells Fargo, TransCare's ABL lender who is similarly unaffiliated with Ms. Tilton or the Collateral Managers.

In order for judicial estoppel to apply, the party arguing for estoppel must typically show that: (i) a party's later position is "clearly inconsistent" with its earlier position; (ii) the party's former position has been adopted in some way by the court in the earlier proceeding; and (iii) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 1815 (2001). The Second Circuit has taken a fairly narrow view of the judicial estoppel doctrine, stating that judicial estoppel is limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997)). *See also Chevron Corp. v. Donzinger*, 833 F.3d 74, 128 (2d Cir. 2016) (A court will not apply judicial estoppel where the positions taken in a current and a prior proceeding "do not present an irreconcilable conflict.") (citation omitted).

Here, Ms. Tilton and the Collateral Managers' position in the ALJ Proceeding is not "clearly inconsistent" with their position in this case. First, as stated above, no Defendant has asserted that Ms. Tilton, in her role as Manager of the Collateral Managers, or the Collateral Managers was without discretion to amend or modify the Credit Agreement or defer or waive interest due thereunder insofar as it relates to the Zohar Funds. Second, 9 of the 14 Defendants in this case were not even parties to the ALJ Proceeding and cannot be judicially estopped from making any arguments in this case by virtue of positions taken by the parties to that proceeding, which solely involved the Zohar Funds and their disclosures. The Trustee cannot invoke judicial estoppel against these 9 Defendants absent a showing that they are in privity with the Collateral Managers or Ms. Tilton, acting solely in her role as Manager of the Collateral Managers. The Trustee has not and cannot make such a showing.

Perhaps realizing that his claim of judicial estoppel is meritless, in his letter the Trustee makes a new argument having nothing whatsoever to do with the ALJ Proceeding or estoppel. In that regard, while conceding that "Tilton" could not waive the interest due to the Outside Lenders (e.g., Credit Suisse and First Dominion) (Trustee's Letter at 5), the Trustee nevertheless argues that "Tilton could elect to . . . waive *any* Event of Default [including the failure to pay interest], due to her control of the Required Lenders[5] under the Credit Agreement." *Id.* (emphasis added). The Trustee is wrong. Section 12.1(b) of the Credit Agreement provides in relevant part:

---

[5] "Required Lenders" include Ark II, AIP and the Zohar Funds.

**Proskauer≫**

Honorable Stuart M. Bernstein
July 9, 2018
Page 4

> Neither this Agreement nor any other Loan Document, nor any terms hereof or
> thereof may be amended, supplemented or modified except in accordance with the
> provisions of this Section 12.1.  The Required Lenders may, or, with the written
> consent of the Required Lenders . . . the Administrative Agent may . . . (b) waive .
> . . any of the requirements of this Agreement . . . or any Default or Event of
> Default and its consequences . . . <u>provided, further</u>, that *no such waiver . . . shall
> (i) . . . reduce the stated rate of any interest . . . or extend the scheduled date of
> any payment thereof . . .* **in each case without the consent of each Lender
> affected thereby.**

§ 12.1(b)(i)(emphasis in italics and bold added).  "Lender" is defined to include the Outside
Lenders (e.g., Credit Suisse and First Dominion).[6]  Accordingly, contrary to the Trustee's
contention, neither the Required Lenders nor, Ms. Tilton, could waive an Event of Default
affecting the Outside Lenders without their consent.[7]

> In short, judicial estoppel has no place here since no Defendant is arguing a position that
is contrary to a position that was taken and adopted in the ALJ Decision.

Respectfully submitted,

/s/ Michael T. Mervis

Michael T. Mervis

cc:      Counsel of Record (by ECF)

---

[6] In fact, the emails the Trustee refers to in the Complaint confirm that neither the Required Lenders nor PPAS could
or did waive interest payments due on Loans involving the Outside Lenders.  *See* Compl. ¶ 52 ("we have re-
approached the subject of interest payment today with the board.  TransCare must pay interest today as PPMG (*sic*)
is not the only lender."); *see id.* at ¶ 67 (referencing email chain in which Michael Greenberg instructs Glenn Leland
to issue an interest payment to PPAS because "the [Tilton-affiliated] funds are not the only lenders.")

[7] And, of course, neither this new argument, nor the doctrine of judicial estoppel, is relevant to the Wells Fargo loan
facility, which obviously was not controlled by "Tilton."