# STORCH AMINI PC

**Avery Samet**  
MEMBER NY BAR

212.497.8239  
asamet@storchamini.com

March 21, 2019

**VIA ECF AND EMAIL**

The Honorable Stuart M. Bernstein  
United States Bankruptcy Court for the Southern District of New York  
One Bowling Green  
New York, New York 10004  
Bernstein.chambers@nysb.uscourts.gov

    **Re: Pre-Motion Conference in *LaMonica v. Tilton, et al.*, Adv. Pro. No. 18-1021**

Dear Judge Bernstein:

  On behalf of the Plaintiff in the above-referenced adversary proceeding, we write in advance of the conference scheduled for March 28, 2019 [Doc. 69] regarding Defendants' intention to move for summary judgment [Doc. 65].

  Local Bankruptcy Rule 7056-1(a) was promulgated "because motions for summary judgment are frequently burdensome, in time and expense, for the Court and the parties. Parties frequently file motions for summary judgment when an objective examination would reveal triable issues of fact or when the Court might conclude that it would be more cost-effective to resolve all issues at trial[.]" *See* Official Comment. Here, an objective examination reveals that the few claims against which Defendants intend to seek summary judgment require a trial to resolve disputed factual issues, and even if their limited motion is successful (which it will not be), it would not dispose of the case entirely. Plaintiff's claims should proceed to trial forthwith.

  Defendants seek summary judgment on the grounds that (a) Lynn Tilton lacked malicious intent when rejecting purchase offers for Transcare and (b) her strict foreclosure of Transcare's assets constituted a mere "proposal." Under Delaware law, where a director stands on both sides of a transaction, as Ms. Tilton did here according to the undisputed record, the burden shifts to the director to establish that the transaction was the product of both fair dealing and fair price. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983); *RCS Creditor Trust v. Schorsch*, 2017 WL5904716, at *10 (Del. Ch. Nov. 30, 2017). Defendants' letter fails to mention this settled legal standard, much less apply it to the facts of this case. Ms. Tilton's intent, whether malicious or otherwise, is not dispositive.

  The documentary evidence shows that Tilton decided to sell or restructure Transcare on or about December 12, 2015. However, on February 24, 2016 – instead of selling to one of the numerous interested parties or restructuring for the benefit of all stakeholders – Tilton transferred Transcare's most valuable assets to an entity she controlled (Transcendence) and put Transcare (stripped of these assets) into bankruptcy. To avoid the consequence of those transactions,

Hon. Stuart M. Bernstein
March 21, 2019
Page 2 of 2

Defendants' now characterize them as a mere "proposal." [Doc. 65]. But this new posture conflicts with the numerous representations Defendants made to this Court that the strict foreclosure actually occurred. *See e.g.* Doc. 11 at ¶¶5-6, Doc. 49 at ¶9, Doc. 52 at p. 10 of 21, all in Case No. 16-10407. In any event, nothing about the transaction was arms-length and Tilton undertook no independent valuation to arrive at the $10 million in loan forgiveness which, according to PPAS's proof of claim (Claim No. 584) constituted the alleged consideration to Transcare for the transaction. Further complicating any motion for summary judgment, Tilton, at deposition, denied ever providing Transcare with the $10 million credit and claimed it was just something the lawyers came up with.[1] Tilton Tr. 77:17-79-18.

Finally, Defendants do not seek summary judgment on *seven* of Plaintiff's other claims:[2]

- Fraudulent transfer against PPAS, Ark II and the Transcendence entities for taking assets, assets on which Tilton placed a going-concern value of at least $22 million (Claim 7).

- Avoidance of Ark II's security interest, granted two weeks before the petition date, as a preference (Claim 10) or a constructive fraudulent transfer (Claim 11).

- Avoidance of the post-petition transfer which the Trustee paid to PPAS based on PPAS' misrepresentations (Claim 14).

- Subordination of PPAS's claim based upon PPAS's intercreditor agreement with Ark II (Claim 12), equitable subordination of both PPAS's and Ark II's claims (Claim 3) and equitable limitation of their liens (Claim 13).

Trial on these claims will involve substantially the same witnesses and documents as the claims upon which the Defendants seek summary judgment. Because Defendants' contemplated motion will not meaningfully streamline the claims or issues to be tried, we believe pre-trial preparations should continue and the Court should schedule trial in this action.

Respectfully submitted,

/s/ *Avery Samet*

Avery Samet

---

[1] Other statements in Defendants' letter are directly at odds with the factual record, including their claim that they never "took control of estate property in violation of the automatic stay." Furthermore, nothing in the parties' March 10, 2016 stipulation waives stay violations, especially violations which were unknown to the Trustee.

[2] Defendants' letter indicates that they also intend to seek summary judgment on the same three claims that they have moved to dismiss (insider fraudulent transfer, recharacterization of debt and control liability) for the reasons articulated in their pending motion.