**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                            :
                                                  :
                                                  :
      TRANSCARE CORPORATION, et al.,    :      Chapter 7
                                                  :      Case No. 16-10407 (SMB)
                                                  :      (Jointly Administered)
                             Debtors.    :
---------------------------------------------------------------x
SALVATORE LAMONICA, as Chapter 7      :
Trustee for the Estates of TransCare  :
Corporation, et al.,                  :
                                                  :
                           Plaintiff,   :
                                                  :      Adv. Proc. No. 18-1021 (SMB)
           - against -                         :
                                                  :
LYNN TILTON, PATRIARCH PARTNERS       :
AGENCY SERVICES, LLC, PATRIARCH       :
PARTNERS, LLC, PATRIARCH PARTNERS     :
MANAGEMENT GROUP, LLC, ARK II CLO     :
2001-1 LIMITED, TRANSCENDENCE         :
TRANSIT, INC., and TRANSCENDENCE      :
TRANSIT II, INC.,                     :
                                                  :
                           Defendants.  :
                                                  :
---------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE CERTAIN IRRELEVANT
DOCUMENTS AND TESTIMONY RELATED TO CREDIT SUISSE**

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| RELEVANT FACTS | | 2 |
| ARGUMENT | | 4 |
| I. | The Trustee Lacks Standing to Introduce Evidence Regarding Alleged Wrongdoing by PPAS against Credit Suisse Arising From the Ark II Credit Agreement, Rendering Such Evidence Irrelevant | 6 |
| II. | The Credit Suisse Evidence at Issue is Not Relevant to Any Issue to be Tried and Would Waste the Court's Time | 8 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ag Venture Fin. Servs. v. Montagne (In re Montagne)*,
   421 B.R. 65 (Bankr. D. Vt. 2009) ............................................................................................6

*Allen v. Wright*,
   468 U.S. 737 (1984) ..................................................................................................................6

*Arlio v. Lively*,
   474 F.3d 46 (2d Cir. 2007) ....................................................................................................5, 9

*Bird v. SKR Credit, Ltd. (In re DigitalBridge Holdings, Inc.)*,
   Bankr. No. 10-34499, Adv. No. 12-2373, 2015 WL 5766761 (Bankr. D. Utah
   Sept. 30, 2015) ......................................................................................................................7, 8

*Capitol Records, Inc. v. MP3tunes, LLC*,
   No. 07-9931(WHP), 2014 WL 503959 (S.D.N.Y. Jan. 29, 2014) .............................................5

*Dooley v. Columbia Presbyterian Med. Ctr.*,
   No. 06-5644(JCF), 2009 WL 2381331 (S.D.N.Y. July 29, 2009) ..........................................10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   517 F. Supp. 2d 662 (S.D.N.Y. 2007) .......................................................................................5

*In re Old Carco LLC*,
   500 B.R. 683 (Bankr. S.D.N.Y. 2013) .......................................................................................6

*Luce v. United States*,
   469 U.S. 38 (1984) ....................................................................................................................4

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996) ........................................................................................................5

*Pereira v. EisnerAmper LLP (In re Waterford Wedgwood USA, Inc.)*,
   529 B.R. 599 (Bankr. S.D.N.Y. 2015) .......................................................................................8

*Sec. Inv'r Prot. Corp. (In re Madoff Inv. Sec. LLC)*,
   Adv. P. No. 08-01789(SMB), 2017 WL 2602332
   (Bankr. S.D.N.Y. June 15, 2017) ...............................................................................................5

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
   549 B.R. 21 (S.D.N.Y. 2016) ................................................................................................6-7

*U.S. Football League v. National Football League*,
   634 F. Supp. 1155 (S.D.N.Y. 1986) ........................................................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................6

**OTHER AUTHORITIES**

U.S. CONST. art. III, § 2, cl. 1 ................................................................................6

75 Am. Jur. 2d Trial § 98 (2007) .............................................................................5

Fed. R. Evid. 401 .............................................................................................1, 5, 10

Fed. R. Evid. 402 .....................................................................................................1, 5

Fed. R. Evid. 403 .................................................................................1, 5, 10, 11

Defendants[1] respectfully submit this motion *in limine* pursuant to Federal Rules of Evidence 401, 402, and 403 for an order excluding Plaintiff Salvatore LaMonica ("Trustee") from introducing certain evidence at trial related to Credit Suisse, one of the Debtors' secured lenders.

## PRELIMINARY STATEMENT

1. The Trustee has indicated in his so-called "contentions" in the Final Pre-Trial Order ("FPTO") [Dkt 85] that he intends to introduce evidence at the trial concerning Credit Suisse's lack of knowledge regarding the Ark II Intercreditor Agreement (as defined below), the Article 9 foreclosure (as discussed below) and related issues. (FPTO ¶¶ 41–46, 139, 140, 169.) The primary basis for these contentions is the deposition testimony of Alexander Witkes, an employee of Credit Suisse, who the Trustee has identified as one of his trial witnesses. (*Id.* at 70.)

2. Evidence of Credit Suisse's knowledge of or consent to Defendants' actions or inactions during the Relevant Time Period (as defined below) is legally irrelevant to the issues in this case. Simply put, this case has nothing to do with the relationship between any of the Defendants and Credit Suisse. Any hypothetical disagreements between any of the Defendants and Credit Suisse had no impact on the Debtors and are of no concern to the Trustee. Further, even if this evidence had any conceivable relevance, it would be substantially outweighed by the risk that it would cause undue delay and waste time, and should be excluded under Federal Rule of Evidence 403.

---

[1] The Defendants in this adversary proceeding are: Lynn Tilton, Patriarch Partners Agency Services, LLC ("PPAS"), Patriarch Partners, LLC, Patriarch Partners Management Group, LLC , Ark II CLO 2001-1, Limited ("Ark II"), Transcendence Transit, Inc. ("Transcendence Transit"), and Transcendence Transit II, Inc. (and together with Transcendence Transit, "Transcendence").

## RELEVANT FACTS

3. Between November 2014 through February 2016 (the "Relevant Time Period"), TransCare Corporation ("TransCare") had a secured term loan facility (the "Term Loan Agreement") with a consortium of lenders, including (i) the Zohar Funds[2], (ii) Ark Investment Partners II, L.P. ("AIP")), and (iii) Credit Suisse Alternative Capital, Inc., First Dominion Funding I and First Dominion Funding II ("Credit Suisse," and together with AIP and the Zohar Funds, the "Term Loan Lenders"). (Ex. 1; PP-TRBK0000027; *see, e.g.*, Ex. 2, PP-TRBK0099600 at PP-TRBK0099609.) PPAS, a Tilton-controlled entity, was the administrative agent for the Term Loan Lenders under the Term Loan Agreement. (Ex. 3, Tilton Tr.[3] 18:8-19:22.)

4. Throughout the Relevant Time Period, TransCare entered into a series of amendments to the Term Loan Agreement pursuant to which the Zohar Funds advanced additional funds to TransCare or otherwise reduced TransCare's obligations to the Zohar Funds under the Term Loan Agreement. (Ex. 2, PP-TRBK0099600; Ex. 4, PP-TRBK0099588; Ex. 5, PP-TRBK0098857.) Credit Suisse is not a signatory to those amendments. (*Id.*)

5. In January 2016, Tilton authorized and/or provided emergency funding for TransCare. The funding was provided by the Zohar Funds and through a new credit facility entered into between TransCare and Ark II (Tilton's personal investment vehicle), pursuant to which Ark II agreed to commit up to $6.5 million to TransCare (the "Ark II Credit Agreement").[4] PPAS and

---

[2] The Zohar Funds consist of Zohar CDO 2003-1, Ltd., Zohar II 2005-1, Ltd., and Zohar III, Ltd. *See* Declaration of Michael T. Mervis in Support of Defendants' Motion *In Limine* to Exclude Certain Irrelevant Documents and Testimony Related to Credit Suisse ("Mervis Decl.") at Ex. 2, PP-TRBK0099600 at PP-TRBK0099606, submitted herewith. Unless noted otherwise, all exhibits cited herein are annexed to the Mervis Declaration.

[3] "Tilton Tr." refers to the transcript of the deposition of Lynn Tilton taken on October 29, 2018.

[4] Ex. 6, TRANSCARE00231409; Ex. 7, PP-TRBK0099430; Ex. 8, TRANSCARE00138081; Ex. 9, PP-TRBK0098916; Ex. 10, TRANSCARE00024535; Ex. 11, TRANSCARE00231415; Ex. 12, TRANSCARE00231421; Ex. 13, PP-TRBK0047615-16; Ex. 14, PP-TRBK0049638; Ex. 15, PP-TRBK0048966, at PP-TRBK0048967-92.

Ark II also entered into an intercreditor agreement (the "Ark II Intercreditor Agreement"). (Ex. 15, PP-TRBK0048966 at PP-TRBK0049001-16.) Section 2.2 of the Ark II Intercreditor Agreement concerns the relative priority of liens as between PPAS (as agent for the Term Loan Lenders) and Ark II, and provides that Ark II's relative position in the Collateral (as defined therein) was senior to that of PPAS. (*Id.*)

6. In February 2016, Tilton, with the assistance of TransCare's outside restructuring counsel, and in consultation with Wells Fargo and its restructuring counsel, developed a plan to restructure TransCare (the "OldCo/NewCo Restructuring"). Tilton's plan called for simultaneously: (i) forming new corporate entities (*i.e.*, Transcendence) to take over certain TransCare business lines through an Article 9 foreclosure sale, and (ii) winding down the other parts of TransCare (referred to as "OldCo") in a bankruptcy proceeding. (Ex. 3, Tilton Tr. 83:5-14, 236:14-239:10, 255:8-21; Ex. 16, Husson Tr.[5] 127:16-128:9.)

7. Despite intense negotiations over many weeks, Tilton and Wells Fargo did not reach agreement on the funding of the wind-down of the OldCo businesses and Wells Fargo ceased lending to TransCare. On February 24, 2016, the paperwork for the Article 9 foreclosure by PPAS (as administrative agent) was executed. (Ex. 17, PP-TRBK0043305; Ex. 18, PP-TRBK0091197.) As part of the Article 9 foreclosure, PPAS, as administrative agent, the Zohar Funds and AIP issued a Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation to TransCare (the "Notice of Acceptance"). (Ex. 18, PP-TRBK0091197.) The Notice of Acceptance provided that PPAS, as administrative agent, accepted the Subject Collateral (as defined in the Notice of Acceptance) in satisfaction of $10 million of the outstanding Term Loan Agreement

---

[5] "Husson Tr." refers to the transcript of the deposition of John Husson taken on November 12, 2018.

balance. (*Id.*) Later on February 24, 2016, the majority of the TransCare entities filed chapter 7 bankruptcy petitions in this Court.[6]

8.      The Court entered an order on March 25, 2016 by which PPAS and Transcendence authorized the Trustee to sell at auction certain assets, including the Subject Collateral. (*In re TransCare Corporation*, 16-10407-smb, Dkt. No. 52.) A portion of the auction sale proceeds were paid by the Trustee to PPAS. Consistent with the terms of the Ark II Intercreditor Agreement, PPAS distributed its portion of the auction sale proceeds to Ark II.

9.      On November 15, 2018, the Trustee's counsel took the deposition of Alexander Witkes, a credit analyst at Credit Suisse. During the deposition, Mr. Witkes was shown documents and provided testimony concerning Credit Suisse's purported lack of knowledge of, or consent to, the terms of the Ark II Credit Agreement and Ark II Intercreditor Agreement, the OldCo/NewCo Restructuring as well as various amendments to the Term Loan Agreement entered into during 2015. Based on his contentions in the FPTO (¶¶ 41–46, 139, 140, 169), the Trustee apparently intends to introduce evidence on this subject and others relating to Credit Suisse at trial.

## ARGUMENT

10.     A federal court's inherent authority to manage the course of a trial encompasses the fundamental right to rule on pre-trial motions *in limine*. *See Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). "The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that

---

[6] *See In re TransCare Corp.* (16- bk-10407-smb); *In re TransCare New York, Inc.* (16- bk-10408-smb); *In re TransCare ML, Inc.* (16- bk-10409-smb); *In re TC Ambulance Group, Inc.* (16- bk-10410-smb); *In re TransCare Management Services, Inc.* (16- bk-10411-smb); *In re TCBA Ambulance, Inc.* (16- bk-10412-smb); *In re TC Billing and Services Corporation* (16- bk-10413-smb); *In re TransCare Westchester, Inc.* (16- bk-10414-smb); *In re TransCare Maryland, Inc.* (16- bk-10415-smb); *In re TC Ambulance North, Inc.* (16- bk-10416-smb); and *In re TransCare Harford County, Inc.* (16- bk-10417-smb).

4

are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). Because a motion *in limine* may "narrow the issues, shorten the trial, and save costs for the litigants," courts encourage the use of motions *in limine* wherever appropriate. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 517 F. Supp. 2d 662, 667 n.18 (S.D.N.Y. 2007) (quoting 75 Am. Jur. 2d Trial § 98 (2007)).

11. Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible." Fed. R. Evid. 402. Rule 401 defines relevant evidence as evidence having any "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. "If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant. A material fact is one that would affect the outcome of the suit under the governing law." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (citation omitted).

12. Additionally, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The task of weighing these competing interests under Rule 403 belongs to the trial judge." *Capitol Records, Inc. v. MP3tunes, LLC,* No. 07-9931(WHP), 2014 WL 503959, at *5 (S.D.N.Y. Jan. 29, 2014) (citation omitted); *see also Sec. Inv'r Prot. Corp. (In re Madoff Inv. Sec. LLC)*, Adv. P. No. 08-01789(SMB), 2017 WL 2602332, at *5 (Bankr. S.D.N.Y. June 15, 2017) (citation omitted) ("trial court[s] [have] the duty of balancing the trial's primary function of ascertaining the truth concerning the dispute between the parties against the needs of the courts to conserve their time and to protect witnesses from harassment or undue embarrassment at the hands of overzealous advocates.").

## I. The Trustee Lacks Standing to Introduce Evidence Regarding Alleged Wrongdoing by PPAS against Credit Suisse Arising From the Ark II Credit Agreement, Rendering Such Evidence Irrelevant

13. Defendants anticipate that the Trustee will seek to introduce the above-described evidence regarding Credit Suisse to support his claim to equitably subordinate the claims of PPAS and Ark II. Specifically, Defendants expect the Trustee will attempt to prove that PPAS acted in derogation of Credit Suisse's contractual rights under the Term Loan Agreement by entering into the Ark II Intercreditor Agreement and paying post-petition proceeds from auction sales of the Subject Collateral to Ark II. As a threshold matter, this evidence should be excluded because the Trustee lacks standing to seek equitable subordination of Ark II or PPAS's claims based on this alleged conduct. Thus, the evidence is irrelevant to the Trustee's equitable subordination claim and any time spent on it would be a waste.

14. Similar to Article III standing, prudential standing is a "threshold determinant[] of the propriety of judicial intervention," *Warth v. Seldin*, 422 U.S. 490, 518 (1975), and places a limit "on the exercise of federal jurisdiction." *Allen v. Wright,* 468 U.S. 737, 751 (1984). The party invoking federal jurisdiction bears the burden of demonstrating prudential standing. *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (Bernstein, J.). To establish prudential standing, a "plaintiff generally must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." U.S. CONST. art. III, § 2, cl. 1. The question of prudential standing may be raised at any stage of the proceedings. *See Ag Venture Fin. Servs. v. Montagne (In re Montagne)*, 421 B.R. 65, 79 (Bankr. D. Vt. 2009) ("Cases have held that the question of prudential standing may be raised at any stage of the proceedings . . . .").

15. Courts considering standing in the context of equitable subordination claims have determined that a claim belongs solely to an individual creditor, not a trustee for the debtor's estate, where the harm suffered was "particularized." *Tronox Inc. v. Anadarko Petroleum Corp. (In re*

6

*Tronox Inc.)*, 549 B.R. 21, 42 (S.D.N.Y. 2016) ("[A] claim belongs to individual creditors—and not to a debtor's trustee—when the harm suffered was particularized to those creditors, rather than to all creditors as a whole[.]")

16. The notion that the Trustee has standing to pursue subordination of claims based on injury to individual creditors has been squarely rejected. *See, e.g.*, *Bird v. SKR Credit, Ltd. (In re DigitalBridge Holdings, Inc.)*, Bankr. No. 10-34499, Adv. No. 12-2373, 2015 WL 5766761, at *16 (Bankr. D. Utah Sept. 30, 2015). In *DigitalBridge*, DigitalBridge borrowed funds from a group of three equity holders (the "Equity Lenders"). *See id.* at *1. DigitalBridge agreed to file the Equity Lenders' UCC financing statements, but erroneously filed the financing statements in the wrong state, leaving the Equity Lenders' interests unperfected (the "perfection issue"). *Id.* at *1–2. DigitalBridge then entered into a credit agreement with SKR Credit ("SKR"), which properly perfected its security interest (thus giving it priority over the Equity Lenders). *Id.* at *2-3. The trustee sought to subordinate SKR's claim, arguing that it acted inequitably by obtaining a priority position when SKR had knowledge of the perfection issue at the time the SKR loan was made. *See id.* at *1–3, *15–16.

17. The Bankruptcy Court rejected the subordination claim in relevant part because the trustee "lack[ed] standing in this case to the extent he [wa]s asserting another person's legal rights, namely those of the Equity Lenders concerning their claim for a particularized injury." *Id.* at *16. The court explained that while "a trustee [could] bring a general equitable subordination claim on behalf of the estate as a whole, and individual creditors can assert equitable subordination claims if they allege particularized injury, ***a trustee cannot assert an equitable subordination claim on behalf of individual creditors***." *Id.* (emphasis added). Thus, because "[t]he Equity

Lenders' claim for equitable subordination [wa]s based on an alleged injury to three specific secured creditors," the trustee did not have standing to pursue that claim. *Id.*

18. Here, the Trustee's theory seems to be that the Term Loan Lenders suffered an injury when Ark II jumped ahead of and primed them. This is precisely the type of particularized injury (*i.e.*, to, allegedly, the Term Loan Lenders and *only* the Term Loan Lenders) that the court considered in *DigitalBridge* and determined the trustee lacked standing to assert. And for good reason: the allocation of payment between different secured lenders has no impact on the debtors or the unsecured creditor body writ large. Credit Suisse is not a party to this litigation and the Trustee may not seek to enforce the alleged rights of a third party in this adversary proceeding. *See Pereira v. EisnerAmper LLP (In re Waterford Wedgwood USA, Inc*.), 529 B.R. 599, 603 (Bankr. S.D.N.Y. 2015) (explaining that, "[a]s a general matter . . . bankruptcy trustees do not have standing 'to sue third parties on behalf of the estate's creditor's but may only assert claims held by the bankrupt corporation itself.'").

II. **The Credit Suisse Evidence at Issue is Not Relevant to Any Issue to be Tried and Would Waste the Court's Time**

19. At its core, this case concerns Tilton's purported breach of her fiduciary duty of loyalty to TransCare and its estates by pursuing an allegedly "self-dealing" restructuring plan rather than "monetizing" TransCare's assets or pursuing a different restructuring. (FPTO ¶¶ 181–83.) As previously noted, the Trustee's contentions in the Final Pre-Trial Order suggest that the Trustee intends to tie the following purported facts to this claim: (i) Credit Suisse had no prior knowledge of the OldCo/NewCo Restructuring, the Article 9 foreclosure, or the $10 million reduction of TransCare's obligations owing under the Term Loan Agreement; (ii) the Notice of Acceptance was not sent to Credit Suisse; and (iii) Credit Suisse had no prior knowledge of the TransCare chapter 7 petitions. (FPTO ¶¶ 139, 140, 169.)

8

20. All of these facts are completely irrelevant to the breach of fiduciary duty claim.[7] Here, as set forth in the Final Pre-Trial Order, the primary issue to be tried is as follows: "Did Ms. Tilton breach her duties of loyalty and good faith to *TransCare* under Delaware law?" (FPTO at 65 (emphasis added).) The impact of the OldCo/NewCo Restructuring *on Credit Suisse* is not at issue in this proceeding. Similarly, when Credit Suisse learned of the bankruptcy filings (and from whom) is not "of consequence to the determination" of the fiduciary duty claim. *Arlio*, 474 F.3 at 52. To the extent this evidence could bear on anything, it would be a hypothetical dispute between Credit Suisse and one or more of the Defendants. Such a dispute is simply not before the Court (or any Court) in this case, however.

21. What's more, even if it were somehow relevant to determine whether, for example, the OldCo/NewCo Restructuring was fair to Credit Suisse, the evidence the Trustee wants to introduce would not tend to prove a fact "that would affect the outcome of the suit," and is thus irrelevant. *Arlio*, 474 F.3d at 52. That is because, as the Trustee admits and as the relevant agreements make plain, PPAS did not need Credit Suisse's consent to foreclose upon TransCare's assets. (FPTO ¶¶ 32–34.) Moreover, the Trustee does not dispute that PPAS had the *sole* authority to exercise and enforce the Term Loan Lenders' rights under the Term Loan Agreement. (*Id.* at ¶ 34.)[8] Accordingly, the evidence at issue merely demonstrates that PPAS took action consistent with its rights and obligations under the controlling agreements.

---

[7] With respect to Count III (equitable subordination), as discussed previously, the Trustee has no standing to assert claims arising from hypothetical inter-lender disputes. To the extent Credit Suisse was harmed by the OldCo/NewCo Restructuring (and it was not), such a claim does not belong to the Trustee. *See* Section I, *supra*. The Trustee has not proffered any evidence tying or attempting to tie Credit Suisse's knowledge of, or lack of consent to, the OldCo/NewCo Restructuring, or knowledge of the TransCare bankruptcy filings, to the other claims to be tried.

[8] The Trustee also previously argued at length in his Opposition to Defendants' Partial Motion to Dismiss the Amended Complaint that "PPAS — not the individual lenders . . . is the party that controls enforcement of the collective's rights under the PPAS Credit Agreement." And the Trustee further recognized that, pursuant to Amendment No. 17, the "PPAS Credit Agreement expressly agreed that 'no lender shall have any right individually to realize upon any of the Collateral, it being understood and agreed that *all powers, rights and remedies hereunder may be exercised solely by*

22. Defendants also anticipate that the Trustee will seek to introduce evidence concerning whether Credit Suisse was provided with or executed certain amendments to the Term Loan Agreement throughout 2015. (*See, e.g.*, FPTO ¶ 72.) The Trustee can offer no basis to conclude that this evidence is "of consequence in determining the action." Fed. R. Evid. 401. That is because it is not. Whether the terms of the Term Loan Agreement required that Credit Suisse be provided with or execute particular amendments to the Term Loan Agreement is irrelevant to the claims to be tried.[9] Here too, a hypothetical dispute between one or more of the Defendants and Credit Suisse is not something to be heard in this adversary case.

23. At the end of the day, it is obvious that the Trustee seeks to introduce evidence concerning PPAS's and Tilton's dealings with Credit Suisse to suggest Defendants violated or were indifferent to Credit Suisse's rights under the Term Loan Agreement and paint Defendants in a negative light. This is precisely what Rule 403 is designed to prevent. Critically, allowing the Trustee to introduce such evidence would cause the trial to "become dominated by a digressive element masquerading as probative evidence." *U.S. Football League v. National Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986). Indeed, Defendants "would be forced to simultaneously defend against two separate sets of claims, inviting a distracting 'mini trial' into the course of the main proceedings." *Dooley v. Columbia Presbyterian Med. Ctr.*, No. 06-5644(JCF), 2009 WL 2381331, at *2 (S.D.N.Y. July 29, 2009). Under these circumstances, whatever limited significance this evidence might arguably have is "substantially outweighed by a danger of . . .

---

*the Administrative Agent* [PPAS], on behalf of the Lenders in accordance with the terms hereof[.]' (emphasis added)." (*See* Dkt. 63, Trustee's Opp. to Defendants' Partial Motion to Dismiss, at 19–20.)

[9] In any event, the amendments entered into between TransCare, PPAS, and the Zohar Funds during 2015 did not affect Credit Suisse and, therefore, could be entered into without Credit Suisse's consent. (Ex. 1, PP-TRBK0000027 at PP-TRBK0000096, § 12.1.)

confusing the issues, undue delay [and] wasting time," thus warranting exclusion. Fed. R. Evid. 403.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion *in limine* to exclude the testimony of Alexander Witkes, on behalf of Credit Suisse, and any documents, exhibits, or other evidence regarding Credit Suisse's: (i) knowledge of or consent to the Ark II Credit Facility and/or Intercreditor Agreement; (ii) knowledge of or consent to the OldCo/NewCo Restructuring, the Article 9 foreclosure, and the TransCare bankruptcy filings; and (iii) knowledge of or consent to amendments to the Term Loan Agreement in 2015.


Dated: July 8, 2019                                     PROSKAUER ROSE LLP

                                                       By:  */s/ Michael T. Mervis*
                                                           Michael T. Mervis
                                                           Timothy Q. Karcher
                                                           Eleven Times Square
                                                           New York, NY  10036-8299
                                                           Tel.: (212) 969-3000
                                                           Fax: (212) 969-2900
                                                           Email: mmervis@proskauer.com
                                                           tkarcher@proskauer.com

                                                           Nicole A. Eichberger (*pro hac vice*)
                                                           650 Poydras Street
                                                           Suite 1800
                                                           New Orleans, LA 70130-6146
                                                           Tel.: (504) 310-2024
                                                           Fax: (504) 310-2022
                                                           Email: neichberger@proskauer.com

                                                           *Attorneys for Defendants*