Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M St NW #600
Washington, D.C. 20036
Telephone: (202) 682-7248
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch
Partners Agency Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,<br><br>                              Debtors. | Chapter 7<br><br>Case No. 16-10407-DSJ<br><br>(Jointly Administered) |
| SALVATORE LAMONICA, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation*, et al.*,<br>                              Plaintiffs,<br>v.<br><br>LYNN TILTON, *et al.*,<br>                              Defendants. | Adv. Pro No. 18-AP-01021-DSJ |

**OBJECTION OF PATRIARCH PARTNERS AGENCY SERVICES, LLC**
**TO THE TRUSTEE'S MOTION TO APPROVE ATTORNEYS' FEES**

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ......................................................................................................2

III.    ARGUMENT ...........................................................................................................5

        A.      The requested fee award against PPAS would violate the single-
                satisfaction principle. ..................................................................................5

                1.      Section 550(d) of the Bankruptcy Code bars recovery of the
                        Trustee's requested fee award against PPAS................................6

                2.      New York law independently requires an offset.........................9

        B.      The Trustee's fee request also fails on the merits..................................11

                1.      As a matter of law, the Trustee cannot recover fees on failed and
                        non-compensable claims.............................................................12

                2.      The Trustee's documentation is otherwise insufficient to support
                        his fee request. ........................................................................20

IV.     CONCLUSION......................................................................................................23

WEIL:\99846810\1\60494.0003

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acadiana Elec. Serv., Inc.*,
    66 B.R. 164 (Bankr. W.D. La. 1986) ...........................................................................9

*In re Arabella Petroleum Co., LLC*,
    647 B.R. 851 (Bankr. W.D. Tex. 2022) ......................................................................6

*In re Bassett*,
    221 B.R. 49 (Bankr. D. Conn. 1998) ...................................................................6, 7, 8

*In re Bean*,
    251 B.R. 196 (E.D.N.Y. 2000), *aff'd*, 252 F.3d 113 (2d Cir. 2001) ....................6, 7, 9

*In re Belmonte*,
    931 F.3d 147 (2d Cir. 2019) .....................................................................................5, 6

*In re Canal Asphalt, Inc.*,
    2017 WL 1956849 (Bankr. S.D.N.Y. May 10, 2017) ..............................13, 19, 22

*Cap. One, N.A. v. Auto Gallery Motors, LLC*,
    2020 WL 423422 (E.D.N.Y. Jan. 27, 2020) ...........................................................10

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
    293 F. Supp. 3d 1038 (N.D. Cal. 2018) ..................................................................13

*In re DeBerry*,
    945 F.3d 943 (5th Cir. 2019) .................................................................................6, 7

*In re Dreier LLP*,
    462 B.R. 474 (Bankr. S.D.N.Y. 2011) ......................................................................8

*Excelsior Cap. LLC v. Allen*,
    536 F. App'x 58 (2d Cir. 2013) ...........................................................................8, 11

*F.H. Krear & Co. v. Nineteen Named Trustees*,
    810 F.2d 1250 (2d Cir. 1987) ............................................................................19, 22

*Fox v. Vice*,
    563 U.S. 826 (2011) ...................................................................................12, 14, 22

*Gonzales v. Organogenesis, Inc.*,
    2017 WL 11722586 (S.D. Cal. Aug. 30, 2017) ......................................................13

WEIL:\99846810\1\60494.0003

*In re GSC Grp., Inc.*,
    502 B.R. 673 (Bankr. S.D.N.Y. 2013) ................................................................20

*Harris v. Maricopa Cty. Sup. Ct.*,
    631 F.3d 963 (9th Cir. 2011) ................................................................13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................12

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.*,
    419 B.R. 749 (M.D. Tenn. 2009) ................................................................7

*Keen v. Keen*,
    113 A.D.2d 964 (N.Y. App. Div. 1985) ................................................................12, 13

*In re Kingsley*,
    518 F.3d 874 (11th Cir. 2008) ................................................................6

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ................................................................22

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ................................................................12

*Lopez v. NYC Dep't of Homeless Serv.*,
    2023 WL 3255338 (S.D.N.Y. May 4, 2023) ................................................................11

*Marin v. Apple-Metro, Inc.*,
    2020 WL 6157011 (E.D.N.Y. Oct. 21, 2020) ................................................................10

*Marine Midland Bank v. Murkoff*,
    120 A.D.2d 122 (N.Y. App. Div. 1986) ................................................................11

*In re Martin*,
    2011 WL 6130422 (Bankr. E.D. Tenn. Dec. 8, 2011) ................................................................6, 7

*Mfrs. and Traders Tr. Co. v. Lauer's Furniture Acquisition, Inc.*,
    226 A.D.2d 1056 (N.Y. App. Div. 1996) ................................................................10

*Norris v. Sysco Corp.*,
    191 F.3d 1043 (9th Cir. 1999) ................................................................12

*Ortiz v. CIOX Health LLC*,
    386 F. Supp. 3d 308 (S.D.N.Y. 2019) ................................................................10

*In re Phillips*,
    379 B.R. 765 (Bankr. N.D. Ill. 2007) ................................................................7

*In re Provident Royalties, LLC*,
    581 B.R. ................................................................9, 11

iii

*In re Provident Royalties, LLC*,
    581 B.R. 185 (Bankr. N.D. Tex. 2017)...................................................................6, 7, 8

*In re Prudential of Fla. Leasing, Inc.*,
    478 F.3d 1291 (11th Cir. 2007) ...................................................................................6

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
    2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008)............................................................22

*Ray v. Ray*,
    799 F. App'x 29 (2d Cir. 2020) ................................................................................10

*In re Reorganized Lake Diamond Assocs., LLC*,
    367 B.R. 858 (Bankr. M.D. Fla. 2007) ....................................................................19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    568 B.R. 481 (Bankr. S.D.N.Y. 2017)........................................................................8

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*,
    83 F. Supp. 2d 70 (D.D.C. 1999), *rev'd in part on other grounds*, 249 F.3d
    1068 (D.C. Cir. 2001) ................................................................................................6

*Solow Mgmt. Corp. v. Tanger*,
    19 A.D.3d 225 (N.Y. App. Div. 2005) .....................................................................10

*In re Stephen S. Meredith, CPA, P.C.*,
    367 B.R. 558 (E.D. Va. 2007), *aff'd sub nom. In re Meredith*, 527 F.3d 372
    (4th Cir. 2008)............................................................................................................8

*In re Strasser*,
    303 B.R. 841 (Bankr. D. Ariz. 2004)..........................................................................7

*Textron Fin., Inc. v. Bash*,
    2019 WL 3290257 (N.D. Ohio July 22, 2019), *aff'd sub nom. In re Fair Fin.*
    *Co.*, 13 F.4th 547 (6th Cir. 2021)..............................................................................6

*Thompson v. Dignity Health*,
    2020 WL 353659 (D. Ariz. Jan. 21, 2020) ..............................................................13

*In re Tops Holding II Corp.*,
    646 B.R. 617 (Bankr. S.D.N.Y. 2022) .......................................................................9

*In re TransCare Corp.*,
    2020 WL 8021060 (Bankr. S.D.N.Y. July 6, 2020) ......................................2, 3, 4, 8

*In re TransCare Corp.*,
    2021 WL 4459733 (S.D.N.Y. Sept. 29, 2021)......................................................4, 8

iv

*In re TransCare Corp.*,
　592 B.R. 272 (Bankr. S.D.N.Y. 2018) ...................................................................3

*In re TransCare Corp.*,
　602 B.R. 234 (Bankr. S.D.N.Y. 2019) ...................................................................3

*In re TransCare Corp.*,
　81 F.4th 37 (2d Cir. 2023) ...........................................................................3, 5, 8

*In re Ultra Petroleum Corp.*,
　943 F.3d 758 (5th Cir. 2019) ...............................................................................7

*UrbanAmerica, L.P. II v. Carl Williams Grp., LLC*,
　95 A.D.3d 642 (N.Y. App. Div. 2012) ................................................................13

**Statutes**

11 U.S.C. § 544 ...........................................................................................4, 7

11 U.S.C.§ 548 ................................................................................................4

11 U.S.C. § 550 ...............................................................................1, 4, 6, 7, 9

35 U.S.C. § 285 ..............................................................................................13

42 U.S.C. § 1988 ............................................................................................12

N.Y. Debt. & Cred. § 276-a ......................................................................... *passim*

**Rules**

S.D.N.Y. LBR 2016-1(a) ............................................................................20, 23

**Other Authorities**

4F N.Y. Prac. Com. Litig. in N.Y. State Courts § 129:25 (5th ed. 2023)......................10

5 Collier on Bankruptcy ¶ 550.05 (16th ed. 2023) .............................................2, 6, 8

Bill Jacket, 2019 A.B. 5622, Ch. 580 .......................................................................10

WEIL:\99846810\1\60494.0003

Defendant Patriarch Partners Agency Services, LLC ("**PPAS**") respectfully submits this objection to the Trustee's application for an award of attorneys' fees, *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (Bankr. S.D.N.Y. Feb. 7, 2024), ECF No. 169 (the "**Application**" or "**Motion**").

## I.     INTRODUCTION

Because the Trustee has already been paid, his Application calls for a violation of the single-satisfaction principle under both title 11 of the U.S. Code (the "**Bankruptcy Code**") and New York law. From PPAS, he seeks reimbursement for $4.6 million in attorneys' fees and costs and $1.1 million in interest, atop his existing $45.5 million fraudulent transfer judgment. But the sum total of these award components—approximately $51.2 million—falls well short of the complete $51.8 million satisfaction he already obtained from PPAS's co-defendant, Lynn Tilton, for the exact same avoided transfer:

| Avoided Transfer Award Components | Lynn Tilton | PPAS |
|---|---|---|
| Judgment Principal [Paid by Ms. Tilton] | $38,200,000 | $39,200,000 |
| Pre-Judgment Interest [Paid by Ms. Tilton] | $13,324,997 | $6,025,523 |
| Post-Judgment Interest [Paid by Ms. Tilton] | $269,850 | $229,386 |
| Attorneys' Fees and Costs [Requested] | | $4,608,931 |
| Interest on Attorneys' Fees and Costs[1] [Requested] | | $1,107,671 |
| **Total:** | **$51,794,847**   > | **$51,171,511** |

Ms. Tilton's judgment has been paid in full. *In re TransCare Corp.*, No. 1:20-cv-06523 (LAK) (S.D.N.Y. Dec. 7, 2023), ECF No. 44. Although the Trustee fails to mention this fact, he cannot escape its consequence: It renders his fee request against PPAS a nullity under section 550(d) of the Bankruptcy Code and section 276-a of New York's Debtor and Creditor Law ("**DCL**"). The

---

[1] PPAS calculates interest based on its original objection deadline (April 11, 2024), rather than the deadline the Trustee procured by twice unilaterally adjourning the Application hearing without notice to PPAS in direct violation of this Court's scheduling rules. *See* ECF Nos. 176, 177. Even if PPAS were to use the current deadline (July 16, 2024) for its calculation, the additional interest accrued over the last three months (>$100,000) leaves the Trustee well short of the single satisfaction he already obtained from PPAS's co-defendant, Ms. Tilton.

duplicate satisfaction he seeks would transgress this Court's statutory and equitable remit. *See, e.g.*, Collier on Bankruptcy ¶ 550.05 (16th ed. 2023).

Even if the Trustee's Application were not barred by the single-satisfaction principle, it improperly requests reimbursement for work relating almost exclusively to non-compensable claims—all but one of which failed. Virtually none of the Trustee's billing entries bear any connection to the fraudulent conveyance judgment that gave rise to his Application. His invoices are rife with improper block-billing and contain many duplicate entries and errors. He seeks reimbursement for unrecoverable costs, including attorney dinners that predate any documented work on the case. He bills PPAS for time spent arranging lunch and touring potential conference rooms. He repeatedly requests compensation for tracking Ms. Tilton's physical whereabouts. He asks PPAS to pay his lawyers to train their summer associates. He appends no documentation for his special appellate counsel's work. Even outside of bankruptcy, the Trustee could not carry his burden of keeping and presenting time records sufficient to allow this Court and PPAS to determine the nature of his work performed. Given that this has always been a bankruptcy proceeding subject to exacting timekeeping requirements, the Trustee's application is abjectly deficient.

Because the Trustee can only obtain a single satisfaction for the same avoided transfer, his Application should be denied outright. Even if the application were considered on the merits, the Trustee has not carried his burden of establishing entitlement to any award.

## II.    BACKGROUND

The relevant history of this case has been the subject of extensive proceedings, which are summarized here only as relevant to the Trustee's Application. TransCare Corporation ("**TransCare**") provided ambulance services for emergency and non-emergency patients to hospitals and municipalities throughout the mid-Atlantic region. *In re TransCare Corp.*, Adv.

Proc. No. 18-01021 (SMB), 2020 WL 8021060, at *2 (Bankr. S.D.N.Y. July 6, 2020). PPAS's co-defendant, Lynn Tilton, was a majority owner of TransCare. *Id.* PPAS acted as an administrative agent on behalf of several lenders to TransCare. *In re TransCare Corp.*, 81 F.4th 37, 44 (2d Cir. 2023).

As TransCare's finances deteriorated in early 2015, Ms. Tilton directed PPAS to foreclose on certain of TransCare's assets (the "**Subject Collateral**"). *In re TransCare Corp.*, 2020 WL 8021060, at *9, *12. PPAS accepted the Subject Collateral "in satisfaction of $10 million (of approximately $43 million) outstanding under [a] Term Loan" PPAS had issued to TransCare. *Id.* at *12. TransCare thereafter filed chapter 7 petitions in this Court. *Id.* at *13–15. The Trustee was appointed on February 25, 2016. *Id.* at *13. The entire business failed soon after. *Id.* at *13–15.

On February 22, 2018, the Trustee commenced this adversary proceeding against Ms. Tilton and PPAS. *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (SMB) (Bankr. S.D.N.Y. Feb. 22, 2018), ECF No. 1. His original complaint asserted nine claims. *Id.* at ¶¶ 97–138. Six were dismissed in part or in full. *See generally In re TransCare Corp.*, 592 B.R. 272 (Bankr. S.D.N.Y. 2018). A fourteen-count amended complaint followed. *See In re TransCare Corp.*, 602 B.R. 234, 242 (Bankr. S.D.N.Y. 2019). Two of those counts were dismissed. *Id.* at 237, 246–48. This Court (Bernstein, J.) then tried the remaining counts during a six-day bench trial in July and August of 2019. *In re Transcare Corp.*, 2020 WL 8021060, at *16. A year later, the Court issued its post-trial findings of fact and conclusions of law, ruling for the Trustee on two of his ten outstanding claims. *See id.* at *17–33. On Count 1 ("**Breach of Fiduciary Duty Against Tilton**"), the Court recommended a $41.8 million judgment against Ms. Tilton for breaching her fiduciary duties to TransCare under Delaware law. *Id.* at *29. On Count 7 ("**Fraudulent Transfer**

WEIL:\99846810\1\60494.0003

**Against PPAS**"), the Court found that TransCare had transferred the Subject Collateral to PPAS with the intent to hinder or delay TransCare's creditors. *Id.* at *31. It avoided the transaction under sections 548 and 550(a) of the Bankruptcy Code and DCL § 276, a state avoidance action made available to the Trustee by section 544 of the Bankruptcy Code. *Id.* at *29–32. It then awarded a $39.2 million judgment against PPAS for the avoided transfer and recognized a contingent award of reasonable attorneys' fees under DCL § 276-a. *Id.* at *31–33. The Court's findings and conclusions made especially clear that, as between the judgments of Ms. Tilton and PPAS, the Trustee could enjoy only a single satisfaction. *See id.* at *32 ("The damages for breach of fiduciary duty and the fraudulent conveyance *remedy the same injury* and the Trustee is entitled to only a *single satisfaction.*") (emphases added).

PPAS and Ms. Tilton appealed. The District Court (Kaplan, J.) issued a consolidated decision on September 29, 2021 affirming this Court's fraudulent transfer ruling as to PPAS and adopting its recommendation as to Ms. Tilton with a slight downward adjustment to her damages. *See In re TransCare Corp.*, 2021 WL 4459733, at *20 (S.D.N.Y. Sept. 29, 2021). Like the Bankruptcy Court, the District Court recognized that "the damages for the breach of fiduciary duty and the fraudulent conveyance remedy the *same injury*," such that "the trustee is entitled only to a *single satisfaction*." *Id.* (emphases added); *see also In re TransCare Corp.*, No. 1:20-cv-06523 (LAK) (S.D.N.Y. Oct. 6, 2021), ECF No. 11 at 2 ("[T]he Trustee shall be entitled only to a *single satisfaction* on his respective judgments.") (emphasis added).

Thereafter, the Trustee successfully sought prejudgment interest from Ms. Tilton under Delaware law, increasing her total judgment to $51.5 million. *See In re TransCare Corp.*, No. 1:20-cv-06523 (LAK) (S.D.N.Y. Dec. 22, 2021), ECF No. 23 at 2. That amount grew to $51.8

WEIL:\99846810\1\60494.0003

million on account of post-judgment interest. Meanwhile, the Trustee's judgment against PPAS topped out at approximately $45.5 million.

Both PPAS and Ms. Tilton appealed to the Second Circuit, which affirmed the District Court's liability findings and damages calculations. The Second Circuit once again observed that the Trustee's claims against PPAS and Ms. Tilton give rise to "parallel damages" subject to the single-satisfaction principle. *In re TransCare Corp.*, 81 F.4th at 48; *see also id.* at 58 (citing *In re Belmonte*, 931 F.3d 147, 154 (2d Cir. 2019)).

As soon as the Second Circuit's mandate issued, the Trustee elected to proceed against the surety that had issued the supersedeas bond securing the judgment against Ms. Tilton pending resolution of the appeal. The District Court granted the motion and the surety paid 100% of the amount requested by the Trustee—approximately $51.8 million in total. The Trustee filed a satisfaction of judgment as to Ms. Tilton. *In re TransCare Corp.*, No. 1:20-cv-06523 (LAK) (S.D.N.Y. Dec. 7, 2023), ECF No. 44.[2]

### III.   ARGUMENT

**A.    The requested fee award against PPAS would violate the single-satisfaction principle.**

The Trustee already obtained a complete recovery from Ms. Tilton for the same underlying transfer giving rise to the instant Application. Because the amount the Trustee recovered against Ms. Tilton exceeds PPAS's maximum combined liability, the Bankruptcy Code and New York law prohibit the Trustee from recovering any amount sought in his Application.

---

[2] The satisfaction of judgment filed with the District Court omits post-judgment interest paid by Ms. Tilton in the amount of $269,849.81. Her total payment equaled $51,794,847.07.

WEIL:\99846810\1\60494.0003

1. **Section 550(d) of the Bankruptcy Code bars recovery of the Trustee's requested fee award against PPAS.**

Under the Bankruptcy Code, a Trustee is allowed "only a single satisfaction" for any one avoided transfer. 11 U.S.C. § 550(d); 5 Collier on Bankruptcy ¶ 550.05 (16th ed. 2023). This single-satisfaction principle is a "rule of federal common law," *In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1298 (11th Cir. 2007), and applies on a "transfer-by-transfer" basis, *In re Provident Royalties, LLC*, 581 B.R. 185, 195 (Bankr. N.D. Tex. 2017) (citing *In re Prudential of Fla. Leasing, Inc.*, 478 F.3d at 1302); *In re Arabella Petroleum Co., LLC*, 647 B.R. 851, 880 (Bankr. W.D. Tex. 2022) (same).

Courts implement the single-satisfaction principle by offsetting a Trustee's remaining claims against all other judgments, fees, settlements, and payments received for the same fraudulent transfer. *See In re Belmonte*, 931 F.3d at 154 ("Section 550(a) authorizes the Trustee to pursue recovery from all available sources until the full amount of unlawfully transferred Estate property is fully realized for the Estate's creditors."); *see also, e.g.*, *In re Bean*, 251 B.R. 196, 205 (E.D.N.Y. 2000), *aff'd*, 252 F.3d 113, 117 (2d Cir. 2001) (similar); *In re DeBerry*, 945 F.3d 943, 947–48 (5th Cir. 2019) (similar); *In re Kingsley*, 518 F.3d 874, 877–78 (11th Cir. 2008) (similar); *In re Provident Royalties, LLC*, 581 B.R. at 195 (similar); *In re Bassett,* 221 B.R. 49, 55 (Bankr. D. Conn. 1998) (similar); *Textron Fin., Inc. v. Bash*, 2019 WL 3290257, at *4 (N.D. Ohio July 22, 2019), *aff'd sub nom. In re Fair Fin. Co.,* 13 F.4th 547 (6th Cir. 2021) (similar); *In re Martin*, 2011 WL 6130422, at *11–12 (Bankr. E.D. Tenn. Dec. 8, 2011) (similar).

The single-satisfaction principle applies as long as litigation persists over a fraudulent conveyance. *See, e.g.*, *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F. Supp. 2d 70, 88 (D.D.C. 1999) (observing that the "single satisfaction rule would allow Defendants to get credit for damages paid to . . . Plaintiffs should there be any subsequent lawsuits

awarding damages"), *rev'd in part on other grounds*, 249 F.3d 1068 (D.C. Cir. 2001). It also applies before an "avoidance action . . . [is] ever commenced." *In re Bassett,* 221 B.R. at 55. The rule thus operates perpetually "as a restrictor plate on the roaring engine of recovery" provided by the Bankruptcy Code. *In re Provident Royalties, LLC*, 581 B.R. at 195; *see also In re Bean*, 251 B.R. at 206 ("The standard is not . . . to inflict wanton punishment; rather, it is to use good common judgment in the exercise of an appropriate discretion.").

The forceful command of section 550(d) owes to the primacy of federal bankruptcy law. *See In re DeBerry*, 945 F.3d at 948 (citing *In re Ultra Petroleum Corp.*, 943 F.3d 758, 763–64 (5th Cir. 2019)). "When a transfer is avoided under [state law], the next step is to look to 11 U.S.C. § 550," *In re Phillips*, 379 B.R. 765, 780 (Bankr. N.D. Ill. 2007), which "expressly places controls on § 544 state law avoidance actions." *In re Strasser*, 303 B.R. 841, 848 (Bankr. D. Ariz. 2004) (internal citations omitted); *see also In re Martin*, 2011 WL 6130422, at *12 (citing *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.*, 419 B.R. 749, 760 (M.D. Tenn. 2009)) (observing that a "court cannot invoke state law remedies to circumvent or undermine the specific remedy legislated by Congress for the avoidance of a fraudulent transfer" in section 550) (citations omitted).

Here, pursuant to section 550 of the Bankruptcy Code, the Trustee cannot recover a DCL § 276-a fees award from PPAS that, combined with PPAS's underlying judgment principal and interest, is less than the $51.8 million recovery he already obtained from Ms. Tilton for the same avoided transfer. "Just because the Trustee has the right to bring multiple claims in a single lawsuit does not mean that they should be allowed to interfere with each other or to affect the application of the single satisfaction rule." *In re Provident Royalties, LLC*, 581 B.R. at 195. Indeed, each court in this litigation expressly allowed only a single recovery for the Trustee's

WEIL:\99846810\1\60494.0003

disparate claims under Delaware, New York, and federal law. *In re TransCare Corp.*, 81 F.4th at 48, 58; *In re TransCare Corp.*, 2021 WL 4459733, at *20; *In re TransCare Corp.*, 2020 WL 8021060, at *32. Each of these sources of liability—like the Trustee's DCL § 276-a claim—traces to the same transaction. *See In re TransCare Corp.*, 2021 WL 4459733, at *20 (observing that Ms. Tilton's "breach of fiduciary duty and the fraudulent conveyance remedy the same injury"). Indeed, the Trustee's DCL § 276-a claim exists *because of* PPAS's liability as a transferee of the Subject Collateral. *See, e.g., In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) ("By its terms, DCL § 276-a is derivative of an actual fraudulent transfer claim under DCL § 276 . . . hence, it 'stands or falls' with the disposition of that claim."); *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58, 61–62 (2d Cir. 2013) (similar).

The Trustee notes that the Court previously "determined that [he] was entitled to attorneys' fees from PPAS under DCL § 276-a." Motion at 2. In fact, the Court recognized the Trustee's right to pursue an award—not a recovery. *See In re TransCare Corp.*, 2020 WL 8021060, at *32. This distinction matters because "[t]he single satisfaction rule *is a limitation on recovery . . . .*" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 568 B.R. 481, 489 (Bankr. S.D.N.Y. 2017) (emphasis added); *see also* 5 Collier on Bankruptcy ¶ 550.05 ("[T]he trustee's remedy is limited to the *recovery* of property or its value, *and not damages . . . .*") (emphases added). This "means that [PPAS] is entitled to offset its liability . . . by any amount that the Trustee has already received" for the same transfer from other sources—*i.e.*, Ms. Tilton. *In re Stephen S. Meredith, CPA, P.C.*, 367 B.R. 558, 563 (E.D. Va. 2007), *aff'd sub nom. In re Meredith*, 527 F.3d 372 (4th Cir. 2008); *see also In re Bassett,* 221 B.R. at 55 (observing that recovery from one defendant is "inappropriate" when a second defendant has already "fully satisfied the Debtor's bankruptcy estate to the extent of its legitimate avoidance").

WEIL:\99846810\1\60494.0003

There is nothing anomalous about the entry of a contingent award that is later rendered unenforceable due to the single-satisfaction principle. That is section 550(d)'s purpose. *See, e.g.*, *In re Bean*, 251 B.R. at 205–06; *In re Provident Royalties, LLC*, 581 B.R. at 194–96. To suggest otherwise would ignore the reality and uncertainty of litigation. When this Court authorized fees against PPAS in July 2020, two layers of appellate review remained, Ms. Tilton's non-core judgment would not be entered for more than a year, and each Defendant faced disparate interest accrual schemes under different state laws. That Defendants' respective liabilities for the same underlying transfer came to diverge by $6.3 million owes simply to the natural progression of the case.

When the Trustee elected to proceed against Ms. Tilton (or, more accurately, her surety) to maximize his recovery, he did so with full knowledge that section 550(d)'s single-satisfaction rule barred subsequent enforcement of any DCL § 276-a attorneys' fees award less than the difference between the Defendants' respective judgments. In filing his Application anyway, the Trustee violates his obligations under the Bankruptcy Code, taxes this Court's scarce resources to no purpose, and fails to discharge his duties to creditors. *See In re Bean*, 251 B.R. at 205 (quoting *In re Acadiana Elec. Serv., Inc.*, 66 B.R. 164, 168 (Bankr. W.D. La. 1986)) (discussing the single-satisfaction rule and observing that "bringing a lawsuit 'which would cost the estate fees and costs, when no recovery could result, would be a breach of the trustee's duties'").

### 2. New York law independently requires an offset.

New York law confirms that the Trustee's Application must be denied. New York's DCL was "amended by enactment of the 'Uniform Voidable Transactions Act' on December 6, 2019, effective April 4, 2020." *In re Tops Holding II Corp.*, 646 B.R. 617, 642 n.37 (Bankr. S.D.N.Y.

WEIL:\99846810\1\60494.0003

2022).  The current version of the statute[3] caps the Trustee's recovery at "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less."  DCL § 277(b)(1) (effective April 4, 2020); *see also id.* § 276-a (limiting recoverable attorneys' fees to those necessary to satisfy the creditor's underlying § 276 claim).  Thus, "[i]f the value of the transferred property is less than the amount of the creditor's underlying claim plus the amount of fees fixed by the court, the transferee . . . face[s] no added exposure . . . ."  4F N.Y. Prac. Com. Litig. in N.Y. State Courts § 129:25 (5th ed. 2023).

The same is true under the prior version of the DCL.  Both versions provide for the same recovery "concept" governing fees awards.  *See* Bill Jacket, 2019 A.B. 5622, Ch. 580.[4]  The current DCL simply "elaborates and codifies" preexisting defenses available to "transferees or obligees who are sued."  *Id.* (analyzing DCL § 277(b) (effective April 4, 2020)).  Both DCL versions authorize equitable offsets.  *Compare* DCL § 279(c) (effective April 4, 2020) (allowing "adjustment[s] as the equities may require."), *with Mfrs. and Traders Tr. Co. v. Lauer's Furniture Acquisition, Inc.*, 226 A.D.2d 1056, 1057 (N.Y. App. Div. 1996) (similar).  Indeed, for decades, New York courts have allowed Trustees to recover "that which [they] could have [] obtained had

---

[3] The current DCL applies to obligations incurred and rights of action that have accrued as of April 4, 2020.  *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (citing 2019 N.Y. Sess. Laws Ch. 580, § 7 (A. 5622) (McKinney)).  Under New York law, an attorneys' fees award "represent[s] a conditional award or prerogative which does not mature until [the] underlying action or proceeding has been determined."  *Solow Mgmt. Corp. v. Tanger*, 19 A.D.3d 225, 226 (N.Y. App. Div. 2005); *Cap. One, N.A. v. Auto Gallery Motors, LLC*, 2020 WL 423422, at *6 n.6 (E.D.N.Y. Jan. 27, 2020) (same).  Because "the underlying action"—this adversary proceeding—was determined at the earliest on July 6, 2020 when this Court entered its post-trial findings of fact and conclusions of law, the Trustee's claim for attorneys' fees either "matured," *id.*, or "accrued" as of that date, *Ray*, 799 F. App'x at 31 n.1; DCL § 275(e)(2).  This is so despite separate rules governing the timing of the avoided transfer itself.  *See* DCL § 275(a)–(d).

[4] "A bill jacket comprises an official compilation of materials that accompanies a bill on its life from legislative action through executive action and is intended by the Legislature and the Governor to be an official history of the bill's enactment, explain its purposes and provides insight into its language."  *Marin v. Apple-Metro, Inc.*, 2020 WL 6157011, at *6 (E.D.N.Y. Oct. 21, 2020) (citing William H. Manz, *The Citation Practices of the New York Court of Appeals: A Millennium Update*, 49 Buff. L. Rev. 1273, 1288 (2001)); *see also Ortiz v. CIOX Health LLC*, 386 F. Supp. 3d 308, 315 n.5 (S.D.N.Y. 2019) ("The New York Court of Appeals commonly relies on submissions included in the Bill Jacket as a source of legislative history.").

there been no conveyance," but no more. *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 130 (N.Y. App. Div. 1986). Courts can make Trustees whole by reinstating "the status quo *ante,*" but they cannot generate a windfall by cobbling together different judgment components on different claims that stem from the same underlying injury. *Id.* at 132.

At most, adding interest[5] and requested attorneys' fees and costs to the extant judgment, the Trustee could recover $51.2 million from PPAS. Because this amount is hundreds of thousands of dollars less than what he has *already obtained* from Ms. Tilton for the *same* avoided transfer, his claim is subject to offset. He has no injury-in-fact or redressability, both of which are required for Article III standing at this juncture. *See, e.g.*, *Lopez v. NYC Dep't of Homeless Serv.*, 2023 WL 3255338, at *6 (S.D.N.Y. May 4, 2023); *Excelsior Cap. LLC*, 536 F. App'x at 61–62. The Trustee's failure to disclose that Ms. Tilton has fully satisfied the judgment against her does not lessen that payment's practical nullification of his DCL § 276-a claim. *See In re Provident Royalties, LLC*, 581 B.R. at 194–96.

## B. The Trustee's fee request also fails on the merits.

The Trustee also cannot satisfy his obligation to show that his requested fees were incurred solely because of his compensable claim, as governing precedent demands. His insistence on being paid for all work relating to the case's "common core of facts" is legally incorrect and improperly shifts his burden of proof to PPAS and the Court. *See* Motion at 10. Regardless, his unaudited invoices are so deficient that they entitle him to take nothing under DCL § 276-a.

---

[5] The Trustee is not "entitled to prejudgment interest." Motion at 12. In cases under the Bankruptcy Code incorporating the DCL, the award of pre-judgment interest is entirely discretionary. *In re CNB Int'l, Inc.*, 393 B.R. 306, 335 (Bankr. W.D.N.Y. 2008). Indeed, the Trustee *misdirects* the Court to the wrong Second Circuit opinion from *Palermo* on this issue—a case his own counsel litigated. *Compare* Motion at 13 (citing *In re Palermo*, 549 Fed. App'x 3[8], 41 (2d Cir. 2014)), *with In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014) ("Prejudgment interest was not available to [the Trustee] as a matter of right under New York law.").

WEIL:\99846810\1\60494.0003

1.    **As a matter of law, the Trustee cannot recover fees on failed and non-compensable claims.**

Even if the Tilton judgment did not exist, the Trustee could only recover attorneys' fees against PPAS for work expended solely because of his substantive DCL § 276 claim against PPAS. Fees for litigating the Trustee's other (mostly failed) claims against both Defendants are not reimbursable. *See Keen v. Keen*, 113 A.D.2d 964, 966 (N.Y. App. Div. 1985) (denying a "plaintiff's request for an award of counsel fees under [DCL] § 276-a" when "the relief sought and obtained . . . went far beyond the mere recovery of the [avoided transfer]").

The Trustee proposes a "common nucleus of related facts" test that would allow for an award of "attorney's fees for litigating the entire adversary proceeding," as well as both appeals. Motion at 2.  But as support for this test, he relies on dicta from an old Second Circuit case analyzing 42 U.S.C. § 1988, a provision that authorizes fee-shifting for prevailing civil rights litigants.  *See* Motion at 10, ¶ 49 (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998)).  He does not cite any support for using the section 1988 framework to apply to attorneys' fees under the New York DCL.  Moreover, even if this test were applicable, the Trustee fails to mention that the Supreme Court later modified it to reject his exact position:

> [A] defendant [may] recover reasonable attorney's fees incurred because of, *but only because of*, a frivolous [*i.e.*, compensable] claim.  Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim.
> . . .
> [T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation.
> . . .
> In a suit of this kind, involving both frivolous and non-frivolous claims, a defendant may recover the reasonable attorney's fees he expended solely because of the frivolous allegations.  *And that is all*.

*Fox v. Vice*, 563 U.S. 826, 836, 838, 840–41 (2011) (emphases added).  The *Fox* rule was not an innovation.  It built on the well-established precedent that "[i]t is the obligation of the party who

WEIL:\99846810\1\60494.0003

seeks fees to document 'the appropriate hours expended and hourly rates,' and he 'should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'" *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The wisdom of this rule has led to its adoption in a wide range of fee-shifting contexts.[6] In DCL § 276-a actions in particular, New York courts have recognized that Trustees receive no reimbursement for work that "[goes] far beyond the mere recovery of the [avoided transfer]," *Keen*, 113 A.D.2d at 966, or which "involve[s] many other issues besides fraudulent conveyance," *UrbanAmerica, L.P. II v. Carl Williams Grp., LLC*, 95 A.D.3d 642, 644 (N.Y. App. Div. 2012).

The Trustee does not even attempt to comply with this controlling precedent. Instead, he dumps unaudited invoices on the docket, claims entitlement to all fees, and demands everyone else figure out the rest. He ignores his obligation—not his adversary's, and certainly not the Court's—to do the hard work of culling his created invoices for the information he believes supports recoverable fees. Where, as here, a fee applicant does not discharge this most basic obligation, the Court is well within its discretion to "deny [the] claim on this basis alone." *In re Canal Asphalt, Inc.*, 2017 WL 1956849, at *7 (Bankr. S.D.N.Y. May 10, 2017); *see also id.* ("The Court should

---

[6] *See, e.g.*, *Gonzales v. Organogenesis, Inc.*, 2017 WL 11722586, at *1 (S.D. Cal. Aug. 30, 2017) (quoting *Harris v. Maricopa Cty. Sup. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011)) (analyzing Cal. Gov't Code § 12965) ("Where, as here, the plaintiff seeks relief . . . under various legal theories based on essentially the same acts, and a number of her claims are not frivolous, the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry."); *Thompson v. Dignity Health*, 2020 WL 353659, at *2 (D. Ariz. Jan. 21, 2020) (analyzing A.R.S. § 12-341.01) ("[T]he only fees that may be attributed to a plaintiff's contract claims for purposes of § 12.341.01(A) are those that the defendants are able to demonstrate would not have been incurred but for the inclusion of those claims in the complaint. Each time entry a prevailing defendant seeks a fee award for must be exclusively for work performed in order to provide a defense against claims for which fees are permissible.") (cleaned up); *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, 293 F. Supp. 3d 1038, 1048–1949 (N.D. Cal. 2018) (analyzing 35 U.S.C. § 285) ("This Court finds that the 'but for' standard applies, and thus Truven is entitled to recover only those fees and costs it incurred because of CCGroup's assertion of the '981 patent[.]").

WEIL:\99846810\1\60494.0003

not be asked to, in effect, serve as [a fee applicant's] advocate to find the entries that meet [a claim's] requirements.").

But even if this Court were to shoulder the Trustee's burden of proof by sifting through the invoices he actually attaches to his application, it would discover documentation that warrants only a nominal fee award. A fair review of the Trustee's billing entries reveals only trace work "incurred because of, but only because of" the fraudulent conveyance claim, versus every other claim for which fees are unavailable. *Fox*, 563 U.S. at 836. More than a third of the declared value of this recoverable work—bolded below—is block-billed or duplicate, highlighted in gray:

| 10/31/2018 | JC | **Conferences with AS re: avoidance/security interest issues vis-a-vis Ark II and PPAS Credit Agreements** | **0.7** | **$315.00** |
|---|---|---|---|---|
| 11/2/2018 | JC | Review debt and security instruments; **draft analysis re: avoidance exposure re: same; conference with AS re: foregoing**; teleconference with G. Herbst and AS | **4.8** | **$2,160.00** |
| 11/8/2018 | JC | Review transcript of 11/1 hearing; **conference with AS re: fraudulent conveyance claims** | **1.8** | **$810.00** |
| 11/9/2018 | JC | Review transcript of 11/1 hearing; **conference with AS re: fraudulent conveyance claims** | **1.8** | **$810.00** |
| 11/13/2018 | JC | Attention to amended complaint; research re: relation back matters; **research re: fraudulent conveyance matters; conferences with AS, JBL, BA, RB, GK re: same** | **4.8** | **$2,160.00** |
| 1/14/2019 | JBL | Conference with AS re: motion to dismiss (.1); **case law research re: fraudulent transfer (4.1); correspondence to AS, GK re: same (.1); conference with AS re: same (.2)**; review of Defendants' motion papers (.3); correspondence to BA, AS, GK re: same (.2) | 5.0 [4.4] | $1,687.50 [$1,485.00] |
| 2/2/2019 | JBL | **Case law research re: fraudulent transfers (.2); correspondence to AS re: same (.4)** | **0.6** | **$202.50** |

14

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 2/3/2019 | JBL | **Case law research re: fraudulent transfers (4.0); review of file re: same (.2) correspondence to AS, JC re: same (.6)** | **4.8** | **$1,620.00** |
| 2/4/2019 | JC | **Conferences with AS re: conduit defense asserted by PPAS with regards to motion to dismiss** | **0.7** | **$315.00** |
| 2/5/2019 | JC | **Conferences with AS and JBLconduit [sic] defense, New York common law re: insider preference** | **0.9** | **$405.00** |
| 2/7/2019 | JBL | Correspondence to BA, AS re: revised scheduling order (.2); correspondence to BA, AS, M. Tillem, Chambers re: same (.2); **case law research re: fraudulent transfer (1.9); correspondence to AS re: same (.5)**; drafting opposition brief (4.1); correspondence to AS re: same (.1); conference with AS re: same (1.3) | 8.3 **[2.4]** | $2,801.25 **[$810.00]** |
| 2/20/2019 | JC | **Conference with AS, JBL re: conduit defense with motion to dismiss** | **0.5** | **$225.00** |
| 2/28/2019 | JBL | Revisions to opposition brief (2.5); correspondence to AS, GK re: same (.1); correspondence to BA, AS re: correspondence to client (.3); revisions to opposition brief (4.2); correspondence to AS, GK re: same (.1); correspondence to AS, J. Loftin re: related case (.2); **case law research re: avoidance (.4); correspondence to AS re: same (.2)** | 8.0 **[0.6]** | $2,700.00 **[$202.50]** |
| 5/9/2019 | GK | **Inserted Fraudulent Transfer Claim facts (1.0)**; team meeting (1.4) | 2.4 **[1.0]** | $237.60 **[$99.00]** |
| 8/15/2019 | AS | Prepared proposed findings of fact and law (3.7); **emails to team re:** causation, damages and **fraudulent transfer (1)** | 4.7 **[1.0]** | $2,326.50 **[$495.00]** |
| 9/5/2019 | JC | **Emails with AS, ED re: Ark II fraudulent conveyance claim; research re: same** | **0.8** | **$360.00** |
| 9/5/2019 | JBL | **Correspondence to BA, AS, ED, JC re: fraudulent transfer (.3)**; document review re: brief (.3); correspondence to AS re: same (.1) | 0.7 **[0.3]** | $236.25 **[$101.25]** |

WEIL:\99846810\1\60494.0003

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 9/18/2019 | JBL | Correspondence to BA, AS, ED, CJH re: case law cites (.6); revising same (1.5); obtaining cites (2.1); correspondence to AS, RB re: same (.6); **correspondence to AS re: fraudulent transfer (.1)**; conferences with AS, CJH re: brief (.6); revising brief (1.0); correspondence to CJH re: same (.2); correspondence to AS, CJH re: filing logistics (.2) | 6.9 **[0.1]** | $2,328.75 **[$33.75]** |
| 10/4/2019 | JBL | Case law research re: jurisdiction (2.9); conferences with AS re: same (.2); correspondence to BA, AS, ED re: same (1.2); correspondence to AS, RB re: trial record (.1); **correspondence to BA, AS, ED re: fraudulent transfer (.3)**; conference with AS re: research tasks (.2); reviewing draft response brief (1.0); case law research re: preferences (.5) | 6.4 **[0.3]** | $2,160.00 **[$101.25]** |
| 9/30/2020 | JC | **Review second and third volume of judgment debtors production, BBVA and Wells Fargo bank statements, and C. Mercado chart providing context for transfers (4.3); draft email to Proskauer re: same (.5)**; review appeal brief (.7) | 5.5 **[4.8]** | $2,475.00 **[$2,160.00]** |
| 10/6/2020 | JC | Email with A. Deming, M. Hackett re: closeout of Transcendence Transit, BB&T account and review bank statements re: same (.5); **conduct research re: General Objection #12 re: transfers not subject to attachment/execution (2)** | 2.5 **[2.0]** | $1,125.00 **[$900.00]** |
| 10/8/2020 | JC | Review HSBC correspondence re: subpoena (.2); **research re: General Objection #12 re: transfers not subject to attachment and execution and draft motion to compel (2.6)** | 2.8 **[2.6]** | $1,260.00 **[$1,170.00]** |
| 10/13/2020 | JWB | Teleconferences with AS re: brief strategy and next tasks (1.5); **reviewing/outlining bankruptcy court's statement of intent law versus framing of that law in appellants' brief (2.6)** | 4.1 **[2.6]** | $2,306.25 **[$1,462.50]** |
| 10/14/2020 | JWB | **Drafting insert for appeal brief on bankruptcy court's statement of law on intent and appellants' failure to dispute it** | **3.3** | **$1,856.25** |

WEIL:\99846810\1\60494.0003

| 10/16/2020 | JC | **Conference with AS; conference with LK re: confirming closeout of Transcendence account was transferred to TransCare account (.5)**; review A. Deming email re: MOMA, attention to motion to compel (1.8) | 2.3 [0.5] | $1,035.00 [$225.00] |
|---|---|---|---|---|
| 10/19/2020 | JC | Research re: A. Deming defense as to third party discovery and email with Proskauer re: position re: judgment discovery; **research re: avoidance of book transfers**; teleconference with BBVA re: production | **2.6** | **$1,170.00** |
| 10/20/2020 | JWB | Teleconference with AS re: brief and open issues; **researching re: relationship between solvency and badges of fraud** | **3.10** | **$1,743.75** |

Motion Ex. 1 at 52–53, 55–57, 71, 75–76, 78, 80, 99, 131, 134, 138, 141; Motion Ex. 3 at 1, 3–4.

Even if the single satisfaction rule did not bar the Trustee's attempted double recovery, the above survey shows that no more than $24,000 of his appended invoices are traceable to his compensable fraudulent conveyance claim, even before block-billed and duplicate entries are removed.

By contrast, scores of billing entries relate facially to *non*-compensable claims. By way of just a few examples:

| 6/7/2018 | MAR | Researched S.D.N.Y. cases on DE law governing breaches of fiduciary duty; researched bankruptcy jurisdiction over cases lacking standing | 2.4 | $378.00 |
|---|---|---|---|---|
| 7/12/2018 | GK | Meeting with TransCare team; legal research on Entire Fairness Rule; began research on parties to case | 2.4 | $237.60 |
| 8/28/2018 | AS | Attention to Proskauer "HIPAA demand" and helped JBL prepare response re: same (1.1); prepared JBL for upcoming conference and discussed Proskauer letter to court (.2) | 1.3 | $643.50 |
| 9/25/2018 | SL | Created binder of Payroll Taxes Knowledge for JBL | 1.6 | $158.40 |
| 10/18/2018 | JC | Email with AS re: authority to incur litigation expenses and research re: same (.6) | 0.6 | $270.00 |

WEIL:\99846810\1\60494.0003

| 11/7/2018 | JC | Attention to draft amended complaint; research re: various issues pertaining to new claims, focusing on subordination issues; conferences with AS re: same | 4.8 | $2,160.00 |
|---|---|---|---|---|
| 11/15/2018 | BA | Conference with JBL and AS re: amended complaint and liability for payroll withholdings | 3 | $2,160.00 |
| 1/8/2019 | AS | Discussed legal issues re: breach of fiduciary duty with JBL (.6); reviewed relation back case law and discussed same with JBL (.4); discussed case strategy with BA (.2) | 2.7 | $1,336.50 |
| 2/15/2019 | GK | Legal research re: pleading standards for recharacterization claims (1.1) | 1.1 | $108.90 |
| 3/7/2019 | GK | Entire Fairness research (1.8); conference with AS re: outline (0.7); conference with AS and JBL re: Entire Fairness (0.8); continued research/prepared outline (1.0) | 4.3 | $425.70 |
| 3/17/2019 | AS | Drafted letters re: insurance issue and emails re: same | 1.6 | $792.00 |
| 8/21/2019 | BA | Review Delaware cases from ED re: damages, breach of fiduciary duty issues | 2.5 | $1,800.00 |
| 9/26/2019 | JBL | Case law research re: fiduciary duties, jurisdiction (6.4) | 6.4 | $2,156.80 |

Motion Ex. 1 at 7, 15, 27, 36, 46, 55, 58, 69, 78, 82, 85, 132, 140. The remaining entries—many of which are block-billed—refer vaguely to the litigation as a whole, such that they are not reimbursable. Again, by way of example:

| 10/22/2018 | GK | Responsiveness review of Wells Fargo production; compilation of Attorney's Eyes Only documents from Defendants' production; fact-specific document searches as per AS and JBL upon request; conference with AS re: Tilton deposition and financial chronology; phone call with expert; compilation of documents and update of financial spreadsheets as follow-up to call; privilege log stats list as per JBL | 16.3 | $1,613.70 |
|---|---|---|---|---|
| 10/23/2018 | GK | Completed privilege log stats; organized financial documents ahead of meeting with expert; conducted legal research for privilege log letter as per JBL; | 11.9 | $1,178.10 |

| | | | | |
|---|---|---|---|---|
| | | prepared documents for Lynn Tilton deposition as per BA; shepardized cases in privilege log letter as per JBL | | |
| 11/6/2018 | JC | Review credit documents; attention to draft amended complaint; research re: various issues pertaining to new claims | 5.8 | $2,610.00 |
| 11/7/2018 | JC | Attention to draft amended complaint; research re: various issues pertaining to new claims, focusing on subordination issues; conferences with AS re: same | 4.8 | $2,160.00 |
| 11/16/2018 | BA | Reviewing amended complaint; teleconference with T. Karcher re: demand letter, insurance status | 1 | $720.00 |
| 11/20/2018 | GK | Prepared exhibit chart from expert report as per AS; conference with AS re: expert report and Leland deposition binder; continued cite-checking underlying claims from Amended Complaint as requested by JBL; conducted research on financial model precursors to models relied on in expert report; conference with AS re: models; prepared second copy of Leland binder; uploaded documents for experts; conducted further research for experts as per AS | 14.4 | $1,425.60 |
| 1/31/2019 | BA | Review outline of motion to dismiss response; review Bernstein case; meet with AS and GK re: same | 1.5 | $1,080.00 |
| 7/8/2019 | JC | Attention to opening statement; incorporate 552(b), contractual subordination points; review orders entered | 1 | $450.00 |

Motion Ex. 1 at 48–49, 54–55, 57, 61, 76, 114.

The Trustee's "time entries for services rendered must be specific enough for the court to make an educated decision as to what the fees actually encompass." *In re Canal Asphalt, Inc.*, 2017 WL 1956849, at *7 (quoting *In re Reorganized Lake Diamond Assocs., LLC,* 367 B.R. 858, 869 (Bankr. M.D. Fla. 2007)). In making no attempt to apportion his work to his sole compensable claim, he neglects to "identify the portions of [his] invoices, and corresponding time records, for which [he can] be paid, in essence leaving it up to the Court to find which entries warrant allowance." *Id.* at *6; *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250,

1262 (2d Cir. 1987) ("[S]ince Baden did not keep records that distinguished the time it spent on the present case from that spent on the related contingent fee case, it was not entitled to a fee in this case[.]").   By claiming entitlement to all fees "related to prosecution of this adversary proceeding," Motion at 2, the Trustee invites the Court to award it nothing, *In re Canal Asphalt, Inc.*, 2017 WL 1956849, at *7.

### 2.   The Trustee's documentation is otherwise insufficient to support his fee request.

Even if all the Trustee's claims were compensable, his documentation is so flawed that it structurally impairs the totality of his fees request.  *See* S.D.N.Y. LBR 2016-1(a).[7]   For example, the Trustee seeks compensation for undocumented time:

| JBL | Correspondence to BA, AS re; deposition (.1); handling logistics re: deposition (.1) | 0.20 | 67.50 |
| JBL | | 0.20 | 67.50 |
| RB | Compiled expert documents per AS; met with AS and GK re: expert documents and next steps | 4.60 | 455.40 |

Motion Ex. 1 at 53.  He submits tens of thousands of dollars' worth of duplicate billing entries beyond those already listed above:

| 11/11/2018 | JC | Attention to amended complaint; conferences with AS, JBL, GK re: same | 2.80 | $1,260.00 |
| 11/12/2018 | JC | Attention to amended complaint; conferences with AS, JBL, GK re: same | 2.80 | $1,260.00 |

---

[7] Local Bankruptcy Rule 2016–1(a) requires that "[a] person requesting an award of compensation or reimbursement of expenses for a professional shall comply with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases promulgated by the Court . . . ."  S.D.N.Y. LBR 2016-1(a).  These Amended Guidelines "require time entries to be broken down into project categories and provide that time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  *In re GSC Grp., Inc.*, 502 B.R. 673, 742 (Bankr. S.D.N.Y. 2013) (citing S.D.N.Y. LBR 2016-1(a)) (cleaned up).

WEIL:\99846810\1\60494.0003

| | | | | |
|---|---|---|---|---|
| 11/14/2018 | JC | Research re: various issues pertaining to amended complaint; conferences with AS, JBL, GK re: same | 1.80 | $810.00 |
| 11/15/2018 | JC | Research re: various issues pertaining to amended complaint; conferences with AS, JBL, GK re: same | 1.80 | $810.00 |
| 1/18/2019 | JC | Correspondence with AS re: loan collateral, and implications of stock omission from financing statement; research in connection with pending motion | 1.70 | $765.00 |
| 1/22/2019 | JC | Correspondence with AS re: loan collateral, and implications of stock omission from financing statement; research in connection with pending motion | 1.70 | $765.00 |
| 5/28/2019 | RB | Reviewed Defendants' 7056-1 Statement (2.1); prepared for meeting with JBL (0.3); meeting with JBL re: statement (4.0); prepared transcripts and digests for BA (0.7); emailed LK re: action items for next week (0.3); uploaded exhibits onto flash drives (0.2); discussed trial exhibits with AS (0.1) | 7.70 | $762.30 |
| 6/28/2019 | RB | Reviewed Defendants' 7056-1 Statement (2.1); prepared for meeting with JBL (0.3); meeting with JBL re: statement (4.0); prepared transcripts and digests for BA (0.7); emailed LK re: action items for next week (0.3); uploaded exhibits onto flash drives (0.2); discussed trial exhibits with AS (0.1) | 7.70 | $762.30 |
| 8/15/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/20/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/21/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/26/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/27/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/28/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 8/29/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 9/4/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |
| 9/6/2019 | ED | Research and draft conclusions of law | 8.00 | $4,500.00 |

WEIL:\99846810\1\60494.0003

| 9/10/2019 | JBL | Conferences with AS, RB, AB, LK re: revisions to proposed findings and conclusion (2.0); revisions to same (15.1) | 17.1 | $5,771.25 |
| 9/11/2019 | JBL | Conferences with AS, RB, AB, LK re: revisions to proposed findings and conclusion (2.0); revisions to same (15.1) | 17.1 | $5,771.25 |

Motion Ex. 1 at 56–58, 72, 98, 110, 131–35. He seeks reimbursement for dinners enjoyed months before any documented work occurred. *Compare id.* at 1 (outlining work starting on May 4, 2018), *with* Motion Ex. 2 at 3–4 (invoicing twelve meals from February 20, 2018 through May 3, 2018). He claims PPAS owes him for arranging his own lunch. Motion Ex. 1 at 38, 43, 124. He seeks compensation for repeatedly "research[ing] Ms. Tilton's whereabouts." *Id.* at 106. He bills for training summer associates. *Id.* at 105 ("[A]ttention to legal research from summer associates and new research projects to same."). He offers *no documentation* from his special appellate counsel, opting instead to adopt its invoices by incorporation. *See* Motion at 10, ¶ 50; *see also id.* at 11, ¶ 51 ("All of Sidley Austin LLP's time entries are included in this application."). He bills excessively for certain tasks. *Compare Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 1899938 at *4 (S.D.N.Y. Apr. 29, 2008) (applying a reduction where time entries reflected "excessive billing"), *with* Motion Ex. 1 at 116 (spending ten hours on "[l]egal research for evidence relevancy standard"). And his time entries are exceedingly vague. *Compare Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172–73 (2d Cir. 1998) (applying a reduction for vagueness and other deficiencies where time entries read "letter to court," "staff conference," and "work on motion"), *with* Motion Ex. 1 at 16 ("Researched relevant people in case"), *and id.* at 59, 99 ("research re: trials").

In the end, the Trustee, as the fee applicant, bears the burden of providing documentation that allows others to assess the reasonableness of his fees request. *Fox*, 563 U.S. at 838; *F.H.*

WEIL:\99846810\1\60494.0003

*Krear & Co.*, 810 F.2d at 1265. That is especially true in bankruptcy cases. *See, e.g.*, *In re Canal Asphalt, Inc.*, 2017 WL 1956849, at *6–8; S.D.N.Y. LBR 2016-1(a). The Trustee here has failed this requirement and his fee request should be denied accordingly.

### IV.     CONCLUSION

For the foregoing reasons, Patriarch Partners Agency Services, LLC respectfully requests that this Court deny the Trustee's fee request and deem PPAS's judgment satisfied.

No prior request for the relief sought herein has been made to this Court or to any other Court.

Dated:   July 15, 2024
       New York, New York

Respectfully submitted,

*/s/ Ronit Berkovich*
Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7248
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch Partners Agency Services, LLC*

WEIL:\99846810\1\60494.0003